## 23-1058

# United States Court of Appeals
### *for the*
# Fourth Circuit

JOHN DOE,

*Plaintiff-Appellant,*

– v. –

JANE DOE,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH

# OPENING BRIEF OF APPELLANT

KARA L. GORYCKI
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212) 736-4500
kgorycki@nmllplaw.com

*Counsel for Plaintiff-Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1058__     Caption: __Doe v. Doe__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__John Doe__
(name of party/amicus)

_____

who is _____the appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.    Does party/amicus have any parent corporations?   ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐YES ☑NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: ___/s/ Kara L. Gorycki___     Date: ___2/3/2023___

Counsel for: ___Plaintiff-Appellant___

- 2 -

[ Print to PDF for Filing ]

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ........................................................ 1

ISSUES PRESENTED FOR REVIEW ..................................................... 2

STATEMENT OF THE CASE................................................................ 3

    I.     Statement of Relevant Facts .................................................. 3

         A.     John Doe's Background ............................................ 3

         B.     John Doe's Interactions With Sue Roe ....................... 3

         C.     John Doe's Interactions With Jane Doe....................... 4

         D.     Jane Doe Disseminates False Allegations Against John Doe .................................................................... 6

         E.     Jane Doe Seeks to "Expel" John Doe Via False Title IX Reports ............................................................ 7

         F.     Jane Doe Attempts to Manipulate the Civil Court System .................................................................. 10

         G.     John Doe's Damages ............................................. 11

    II.    Procedural History............................................................ 11

    III.   Rulings Presented For Review: The January 5, 2023 Order............... 12

SUMMARY OF THE ARGUMENT ...................................................... 16

    I.     Abuse of Discretion Standard .............................................. 16

    II.    The Particular Facts of John Doe's Case Favor Anonymity............... 17

    III.   No Balancing of John Doe's Privacy Interest Against Public Access ............................................................................ 18

ARGUMENT ................................................................................. 19

    I.     THE STANDARD OF REVIEW............................................ 19

    II.    THE PARTICULAR CIRCUMSTANCES OF JOHN DOE'S CASE FAVOR ANONYMITY ......................................... 19

i

A.    The *James* Factors ....................................................19

B.    Several Courts in This Circuit Have Accorded
      Pseudonym Status To Students Accused Of Sexual
      Misconduct ...............................................................21

C.    The District Court Abused Its Discretion in Failing to
      Consider Irreparable Harm to John Doe's Reputation ............25

D.    The District Court Abused Its Discretion In Finding
      That the *James* Factors Weigh Against Pseudonym
      Protection ................................................................27

      1.    The District Court Discounted the Very Cases It
            Relied Upon ....................................................27

      2.    The Second *James* Factor Weighs In Favor of
            Anonymity .......................................................28

      3.    The Fourth *James* Factor Does Not Carry
            "Significant" Weight .........................................33

      4.    The Fifth *James* Factor Favors Anonymity ..................36

III.    THE DISTRICT COURT DID NOT WEIGH JOHN DOE'S
        PRIVACY INTEREST AGAINST PUBLIC ACCESS ....................37

CONCLUSION .........................................................................42

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*A.B.C. v. XYZ Corp.*,
  282 N.J. Super. 494 (App. Div. 1995) .................................................................35

*B.R. v. F.C.S.B.*,
  No. 1:19-cv-00917, 2020 WL 12435689
  (E.D. Va. Mar. 10, 2020) ...................................................... *passim*

*Carefirst of Maryland, Inc. v. Carefirst Urgent Care Ctr., LLC*,
  305 F.3d 253 (4th Cir. 2002) ............................................................1, 2

*Doe v. Alger*,
  317 F.R.D. 37 (W.D. Va. 2016)................................................ *passim*

*Doe v. Mass. Inst. of Tech.*,
  46 F.4th 61 (1st Cir. 2022)................................................................1, 2

*Doe v. North Carolina Central Univ.*,
  No. 1:98-cv-1095, 1999 WL 1939248 (M.D.N.C. Apr. 15, 1999).......................30

*Doe v. Pittsylvania County*,
  844 F. Supp. 2d 724 (W.D. Va. 2012) .................................................34

*Doe v. Pub. Citizen*,
  749 F.3d 246 (4th Cir. 2014) ................................................... *passim*

*Doe v. Rector & Visitors of George Mason Univ.*,
  179 F. Supp. 3d 583 (E.D. Va. 2016) ...................................... *passim*

*Doe v. Virginia Polytechnic Inst.*,
  No. 7:18-cv-170, 2018 WL 5929647 (W.D. Va. Nov. 13, 2018)................ *passim*

*Doe v. Virginia Polytechnic Inst.*,
  2020 WL 1287960 (Mar. 18, 2020)........................................... *passim*

*Doe v. Virginia Polytechnic Inst.*,
  No. 7:21-CV-378, 2022 WL 972629 (W.D. Va. Mar. 30, 2022) ................ *passim*

*James v. Jacobson*,
  6 F.3d 233 (4th Cir. 1993) ....................................................... *passim*

*Painter v. Doe*,
  3:15-cv-369-MOC, 2016 WL 376466 (W.D.N.C. July 13, 2016) ............... 21, 32

*Roe v. Does 1-11*,
   No. 20-cv-3788, 2020 WL 6152174 (E.D.N.Y. Oct. 14, 2020) .................... 40, 41

*Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*,
   599 F.2d 707 (5th Cir. 1979) ............................................................................34

*Student A v. Liberty Univ., Inc.*,
   No. 6:20-cv-00023, 2022 WL 1423617 (W.D. Va. May 5, 2022) .......... 29-30, 32

**Statutes & Other Authorities:**

U.S. Const., Amend. I ......................................................................... 23-24

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1332 ....................................................................................1

34 C.F.R. § 106.71 ................................................................... 15, 28, 33

## <u>JURISDICTIONAL STATEMENT</u>

The District Court's subject matter jurisdiction arose under 28 U.S.C. § 1332 because Plaintiff John Doe ("John Doe") is a citizen of the State of South Carolina, Defendant Jane Doe ("Jane Doe") is a citizen of the State of North Carolina and the matter in controversy exceeds the sum of $75,000 exclusive of costs and interest. JA6.

The appeal is timely. On January 5, 2023, the District Court denied John Doe's motion to proceed by pseudonym. JA55-62. On January 15, 2023, John Doe filed a Notice of Appeal. JA52. On January 24, 2023, the District Court stayed the portion of the order denying John Doe's pseudonym motion that required John Doe to file an amended complaint under his legal name until after this appeal is decided. JA3.

The January 5, 2023 Order meets the requirements of the collateral order doctrine and is sufficiently final for purposes of 28 U.S.C. § 1291. *Carefirst of Maryland, Inc. v. Carefirst Urgent Care Ctr., LLC*, 305 F.3d 253, 255 (4th Cir. 2002) (through collateral order doctrine "Supreme Court has construed section 1291 to permit appeals from 'a narrow class of decisions that do not terminate the litigation, but must…nonetheless be treated as final'") (citation omitted). *See Doe v. Mass. Inst. of Tech.*, 46 F. 4th 61, 65-66 (1st Cir. 2022); *James v. Jacobson*, 6 F.3d 233, 237-238 (4th Cir. 1993). An immediately appealable collateral order 1) is conclusive; 2) resolves an important question separate from the merits; and 3) is

effectively unreviewable on appeal from the final judgment in the underlying action. *Carefirst*, 305 F.3d at 255.

The January 5, 2023 Order is immediately appealable under the collateral order doctrine because it conclusively determines the question of whether John Doe can proceed using a pseudonym, which is a question that is separate from the merits of the underlying action. The Order also resolves an issue of considerable importance because the disclosure of plaintiff's identity in the underlying action could cause him grievous harm and the public has an interest in ensuring those seeking justice in the courts are not scared off by the "specter of destructive exposure." *Mass Inst. of Tech.*, 46 F. 4th at 66. The Order is also effectively unreviewable on appeal from the final judgment in the underlying action because, in accordance with the Order, John Doe will have to either dismiss the action or proceed in his own name for the entirety of the action until a final judgment is entered. Once his name is revealed "the toothpaste is out of the tube and … interested onlookers may take notice in a way that cannot be undone by an appellate decision down the road." *Id.*

## ISSUES PRESENTED FOR REVIEW

Did the District Court abuse its discretion when it denied John Doe's motion to proceed by pseudonym?

## STATEMENT OF THE CASE

### I.  Statement of Relevant Facts.

#### A.  John Doe's Background.

John Doe is a natural person who is a citizen, and resident, of South Carolina. JA6. He was accepted to and enrolled in Tulane University ("Tulane") in May 2018 and commenced his studies in August 2018. JA6. While attending Tulane, John Doe was heavily involved in the community, engaging in social and philanthropic activities. JA7. Prior to the events giving rise to the underlying action, John Doe was on track to graduate *cum laude* in May 2022. JA7.

#### B.  John Doe's Interactions With Sue Roe.

John Doe and Sue Roe were involved in a casual, consensual sexual relationship between September 2019 and December 2019. JA8. Towards the end of Fall 2019, John Doe's friends told him that Sue Roe had expressed interest in officially dating him. JA8. John Doe subsequently told Sue Roe that he was not interested in dating and she agreed to remain in an uncommitted, casual relationship. JA8. John Doe and Sue Roe had a few sexual encounters after that conversation and then stopped seeing each other. JA8. In Spring 2020 and Fall 2021 John Doe and Sue Roe did not interact much, though Sue Roe made it known to others that she "hated" John Doe. JA8.

3

In Spring 2021, John Doe and Sue Roe had a consensual sexual encounter and did not interact further until August 2021, when they attended a mutual friend's birthday party at a local bar. JA8. The two spent time together at the party and left the bar together. During the car ride home, Sue Roe apologized to John for being harsh towards him after their relationship ended. JA8-9. Sue Roe also told John that she had just learned that a man with whom she had been involved in a sexual relationship had started "dating" another woman. JA9. When the car arrived at Sue Roe's home, she invited John Doe to come inside. The two went upstairs and engaged in consensual sex. JA9. Soon after, John Doe told Sue Roe "we may regret that later," which caused her to cry. John Doe immediately apologized and explained that he did not mean anything against Roe. He then went to sleep. JA9. A short time later, Sue Roe was still upset about John Doe's comments. She woke up her housemate who asked John Doe to leave. John, who had been sleeping, obliged. JA9.

### C. John Doe's Interactions With Jane Doe.

John Doe and Jane Doe "matched" on Tinder in September 2021 but did not communicate until they ran into each other at a concert on November 20, 2021. JA10. They exchanged phone numbers but did not communicate again until they ran into each other on January 27, 2022 at a bar near Tulane's campus. JA10. On January 28, 2022, John Doe invited Jane Doe to his fraternity's upcoming date party and she accepted. JA10. Prior to attending the date party, John Doe's friend warned him to

4

be careful because Jane Doe had spitefully reported her ex-boyfriend for a conduct violation after he broke up with her. JA10.

On January 29, 2022, John Doe and Jane Doe attended the date party. JA11. During the party, they briefly spoke with a member of another fraternity, "K.S." After K.S. left, Jane Doe told John Doe that K.S. had sexually assaulted her. JA11. John Doe expressed sympathy for what Jane Doe had allegedly experienced. JA11.

At the party, John Doe and Jane Doe each consumed approximately two alcoholic drinks over a period of four hours. John Doe also had one sip from a friend's flask. JA11. At the end of the day, approximately 5:30 p.m., Jane Doe and John Doe shared an Uber home. Jane Doe asked to return to John Doe's house. JA11-12. Jane Doe and John Doe had consensual sexual intercourse and John Doe walked Jane Doe home at around 9:00 p.m. JA12.

On February 2, 2022, Jane Doe texted John Doe to wish him a happy birthday. The two continued to exchange texts throughout the day and night. At around midnight, after Jane Doe said she would like to hang out, John Doe took a Lyft to Jane Doe's house to pick her up. The two walked back to John Doe's house where they had consensual sexual intercourse. Jane Doe slept over and the two were awakened the next morning by her alarm. JA12-13. They engaged in mutual kissing and then Jane Doe said she had to go to work. John Doe walked her home. They had a friendly conversation during the walk. JA13.

5

On February 3, 2022, John Doe went out to a bar with friends and ran into a woman named A.H. He offered to buy her a drink. The two talked for over an hour and left the bar together. Jane Doe saw John Doe talking to A.H. and heard that the two went home together. JA13-14.

### D.  Jane Doe Disseminates False Allegations Against John Doe.

On February 4, 2022, Jane Doe told one of John Doe's friends that John had engaged in nonconsensual sexual activity with her. JA14. By February 6, false rumors were circulating around Tulane that John Doe had sexually assaulted a female student. JA14. The rumors reached Tulane students as far away as Spain. JA14-15.

On February 8, 2022, Jane Doe texted John Doe, falsely claiming that he engaged in inappropriate sexual behavior. JA15. In the text message, Jane Doe referred to John as a "repeat offender." JA15. John Doe was shocked and scared by the text message as he knew that he had not committed any of the acts that Jane was alleging. JA15. Jane Doe sent a screenshot of her text message with the contact name "rapist" for John Doe to several Tulane students, including John's friend. JA16-17.

On February 9, 2022, John Doe's friends called his parents to tell them it was not safe for John to be on Tulane's campus and that someone should come pick him up. JA15-16. On the same day, the president of John Doe's fraternity told John that Jane Doe had called him, claiming that John assaulted her. JA16.

6

On February 10, 2022, John Doe's mother flew to Louisiana to support her son and help him pack and return home. On the next day, due to the mental anguish and heightened anxiety he was experiencing, John withdrew from Tulane for the semester as he already had enough credits to graduate. JA17. When he withdrew from Tulane, John was unaware that a Title IX report had been filed against him or that an investigation had commenced. JA17.

### E.     Jane Doe Seeks to "Expel" John Doe Via False Title IX Reports.

On February 6, 2022—three days after John Doe had sex with someone else—Jane Doe reported to Tulane's Case Management and Victims Support Services ("CMVSS") that she had woken up to a man "beating off on [her]." JA17.

On February 11, 2022, Jane Doe and Sue Roe simultaneously submitted Title IX/Sexual Misconduct reports naming John Doe as the respondent. JA18. Sue Roe claimed that John Doe penetrated her with his fingers and masturbated as she got dressed. Jane Doe claimed that John Doe masturbated while touching her buttocks with his hands and penis. Both claims were unequivocally false. JA18.

Jane Doe and Sue Roe were each interviewed by Tulane's investigator on the same day and there is evidence that they coordinated their statements. For example, Jane Doe told the investigator she was "aware about the previous situation with [Sue Roe]. But [Sue Roe], obviously, will[] tell you her story." JA20. Jane Doe (and Sue Roe) also reported a false timeline to the investigator about how, and when, Jane

Doe and Sue Roe connected with each other, even staging text messages to make it look as if they connected after Jane Doe's alleged incident with John Doe. JA21-24. The evidence shows that they connected at least a week prior to the alleged incident. JA21-24.

Jane Doe also pressured witnesses to align their testimonies with hers, and shared confidential documents with the witnesses in order to accomplish this goal. JA25.

Jane Doe was aware that Tulane's Code of Conduct prohibited "making false statements and/or knowingly providing false information in the course of a Tulane grievance process." JA18. Despite this awareness, Jane Doe made several false and defamatory statements about John Doe to Tulane's Title IX investigator. JA18-19. Jane Doe deleted all her text messages with John Doe in advance of her interview with the Title IX investigator. JA25. Some of the texts that Jane Doe deleted—and which John Doe later provided—showed that Jane lied about her sexual encounters with John. JA25-27. This was corroborated by a witness's testimony during the investigation. JA25. Jane Doe further made contradictory statements about John Doe's awareness of what she alleged happened. JA27-28.

At a point in the Title IX investigation when John Doe began to contact witnesses, Jane Doe posted a Tik Tok video with the words "Knowing consent can't

be given while someone's sleeping." Friends of John Doe and Jane Doe understood that the Tik Tok was about John. JA27.

Evidence collected during the Title IX investigation showed that Jane Doe was aware that John Doe slept with another woman on the night after she and John had been together. JA25. She did not allege that her encounter with John Doe was not consensual until after she saw John with the other woman. JA29. Two witnesses—including Jane Doe's close friend and roommate "E.M."—confirmed to the Title IX investigator that, immediately after she slept over John's house on the night of February 2, 2022, Jane Doe characterized her encounter with John Doe as consensual and normal. JA29. E.M. told the Title IX investigator that Jane Doe changed her story after seeing John Doe out with another woman. JA29.

During the Title IX investigation, Jane Doe acknowledged her awareness of the damage her false claims were causing John Doe. JA20. Jane bragged in text messages that John would be banned from campus if her report identified him as an imminent threat. JA21. After Jane Doe was interviewed by Tulane's Title IX investigator, Tulane indefinitely banned John Doe from campus and from participating in any University sponsored or recognized events or activities. JA21.

Jane Doe expressed negative opinions about John Doe's sexual history to the Title IX investigator and proclaimed that she wanted John expelled and her false claims to be "attached to his name." JA20. Her statements against John Doe were

venomous. For example, she told the investigator "He would have this comfy little job that he had all lined up by mommy and daddy" and "I want him to be expelled. And now, that he's been an idiot and withdrawn, then he literally can't reenroll or transfer, or graduate." JA30. Jane Doe also sent text messages to John Doe's friend to find out details about John's post-graduation work plans. JA30.

Tulane expelled John Doe on May 8, 2022, less than one month prior to his graduation. JA31.

### F.    Jane Doe Attempts to Manipulate the Civil Court System.

On March 16, 2022, Jane Doe filed a Petition for Protection From Abuse in Louisiana Civil Court. In her petition, Jane Doe requested that John Doe be barred from contacting her through third parties and from stepping foot on Tulane's campus. JA30. She falsely accused John Doe of harassing, intimidating and stalking her even though she had had no contact with John Doe since she texted him on February 8, 2022. JA30. The true purpose of Jane Doe's petition was to intimidate John Doe so that he would stop reaching out to witnesses and collecting evidence for the Title IX investigation. JA30. Jane Doe also recognized that obtaining a TRO against John in Civil Court would benefit her in the Title IX proceedings at Tulane. JA31. Jane Doe did not appear at the TRO hearing, which was summarily dismissed. JA31.

### G.    **John Doe's Damages.**

As a result of Jane Doe's false and defamatory statements that John Doe is a "rapist," John Doe has suffered physical, psychological, emotional and reputational harm. JA5. He has also lost educational and career opportunities and potential future earnings as a result of his expulsion from Tulane. JA5. Given Jane Doe's desire to "attach his name" to her false allegations, and her inquiry about John Doe's future plans, the threat of the further spread of her false allegations is ever present. JA5, JA21, JA30.

## II.    **Procedural History.**

John Doe filed the Complaint on December 8, 2022, alleging claims against Jane Doe for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress and civil conspiracy. JA1, JA32-41. On the same day, he filed a motion to proceed by pseudonym. JA1, JA43-51. On January 5, 2023, the District Court denied John Doe's motion. JA2. On January 15, 2023, John Doe filed a Notice of Appeal. JA2, JA52-54. On January 20, 2023, John Doe filed a motion to stay the portion of the Court's January 5, 2023 order that required John Doe to file an amended complaint under his legal name until the Court of Appeals ruled on his appeal. JA2. On January 24, 2023, the District Court granted John Doe's motion to stay. JA3. On January 25, 2023, the Court was notified of the stay. JA3. On February 24, 2023, after business hours, Jane Doe's attorneys filed

notices of appearance and a Disclosure Statement on the docket for this appeal. Docket ## 13-15. These forms were publicly filed and identified Jane Doe by her real name. *Id.*

### III.    Rulings Presented For Review: The January 5, 2023 Order.

Prior to Jane Doe's appearance in the underlying action, the District Court denied John Doe's motion to proceed by pseudonym and ordered him to file an amended complaint using his real name. JA1-3, JA61. Though John Doe's motion requested that he, Jane Doe and non-party Sue Roe each be permitted to proceed pseudonymously in the litigation, (JA44, JA47-48, JA50), the District Court treated the motion as "only request[ing]" that John Doe proceed as a pseudonymous plaintiff. JA55. The District Court did "not express an opinion about whether plaintiff's amended complaint should use a pseudonym for [Jane Doe]." JA61-62.

In reaching its decision, the District Court relied on the five factors enunciated in *James*, 6 F.3d at 238 and *Doe v. Pub. Citizen*, 749 F.3d 246, 273 (4th Cir. 2014) (hereinafter referred to as the "*James* factors"). JA56. However, the District Court did not recognize that the *James* factors are "nonexclusive" and there is "a judicial duty to inquire into the circumstances of particular cases to determine whether [anonymity] is warranted." *Pub Citizen*, 749 F.3d at 273; *James*, 6 F.3d at 238; JA56.

Regarding the first *James* factor, the District Court correctly found that (i) John Doe was not trying to use a pseudonym merely to avoid the annoyance and

12

criticism that may attend litigation and (ii) "desires to proceed pseudonymously in order to preserve his privacy in a matter that is sensitive and highly personal." JA57. In making this determination, the District Court relied on cases in which male students sued educational institutions for wrongful disciplinary actions arising from sexual assault allegations and were allowed to proceed by pseudonym. JA57. *See Doe v. Virginia Polytechnic Inst.*, No. 7:21-CV-378, 2022 WL 972629, at *2 (W.D. Va. Mar. 30, 2022) (allowing plaintiff to proceed by pseudonym); *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593-594 (E.D. Va. 2016) (allowing both alleged perpetrator and alleged victim of sexual assault to proceed by pseudonym); *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016) (same). Despite its reliance on these cases, the District Court held that John Doe's reliance on the same cases in support of his pseudonym motion was "wrong" and that the "considerations in those cases do not apply here." JA45, JA47, JA61.

The District Court acknowledged that the mere accusation of sexual misconduct, if disclosed, can invite harassment and ridicule, yet erroneously found that the second *James* factor, "risk of retaliatory physical or mental harm," was "neutral" because John Doe "failed to produce evidence of more than a mere general fear of retaliation or mere embarrassment." JA57-58 (citation omitted). In so finding, the District Court did not consider John Doe's assertion that being falsely branded as a sexual predator would cause him physical and mental harm, or the Complaint's

13

allegations that, as a result of Jane Doe's false accusations, John Doe has already been the target of retaliatory physical and mental harm. JA48; JA4-5, JA14-17, JA30-31.

Regarding the second *James* factor, the District Court also found that there were no "aggravating factors" beyond the "subject matter of the sexual assault allegations," including that John Doe "fail[ed] to allege in the complaint that these allegations were widespread." JA58. Neither *James* nor *Public Citizen* enumerate "aggravating factors" that need be considered with respect to the second *James* factor. *James*, 6 F.3d at 238; *Pub. Citizen*, 749 F.3d at 273. Even so, the Court overlooked that, according to the Complaint, Jane Doe spread the false allegations against John Doe to his classmates (including those studying abroad), friends and Tulane University's administration. JA48; JA14-17, JA20-21, JA27-28.

Regarding the second *James* factor, the District Court further found that "potential harm to Jane Doe and Sue Roe…does not affect whether the court should allow plaintiff to pursue this action pseudonymously." JA58. This was error. The second *James* factor permits the Court to consider harm to non-parties. *James*, 6 F.3d at 238; *Pub Citizen*, 749 F.3d at 273. Several cases the District Court relied upon in its opinion also considered the risk of retaliatory harm to the non-party accuser when evaluating the second *James* factor and permitting the plaintiff to proceed by pseudonym. JA57. *Virginia Polytechnic Inst.*, 2022 WL 972629, at *2;

14

*Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d at 594; *Alger*, 317 F.R.D. at 40. Moreover, federal law recognizes that persons accused of sexual misconduct in university Title IX proceedings can become targets for retaliation and therefore includes them within the protections against retaliation for participants in those proceedings. 34 C.F.R. § 106.71.

The District Court found that the fourth *James* factor "weighs significantly against allowing plaintiff to proceed pseudonymously." JA58-59. As support for this finding, the District Court relied on a (i) 1979 Fifth Circuit opinion concerning a class action lawsuit which alleged Title VII violations for discriminatory hiring practices; and (ii) 1995 New Jersey Superior Court opinion in which a former employee sued a former employer for disability discrimination under New Jersey law. JA59. The District Court cited one case that concerned sexual assault allegations against the plaintiff, who was *permitted* to proceed by pseudonym although he sued individual defendants. JA59. *See Virginia Polytechnic Inst.*, 2022 WL 972629, at * 3. The District Court further held that it would "be fundamentally unfair for plaintiff to be able to 'clear his name' and wield a potential judgment against Jane Doe to his advantage but hide under a shield of anonymity if unsuccessful." JA59. This overlooked that John Doe sought pseudonym protection for Jane Doe for the duration of the litigation. JA49.

The District Court erroneously found that the fifth *James* factor weighed against granting John Doe's pseudonym motion because Jane Doe would be prejudiced by the "abundant use of pseudonyms and initials throughout the complaint." JA60. The District Court acknowledged that Jane Doe is aware of plaintiff's identity because she participated in Tulane's administrative proceedings but failed to consider that Sue Roe and the majority of the witnesses identified by initials in the Complaint are personally known to Jane Doe, precluding any "difficulty or confusion … during discovery." JA60; JA11, JA14, JA20-25, JA27-30.

The Court did not take into account an additional consideration specific to John Doe's case—requiring John Doe to proceed under his real name would cause the precise harm he is seeking to avoid through his lawsuit. JA47.

The Court did not balance John Doe's privacy interest against the public's interest in open judicial proceedings. JA56-57, JA60-61; JA46; *Pub Citizen*, 749 F.3d at 274.

## **SUMMARY OF THE ARGUMENT**

**I.**    **Abuse of Discretion Standard.** The applicable standard of review is whether the District Court abused its discretion when it denied John Doe's pseudonym motion.

**II.**    **<u>The Particular Facts of John Doe's Case Favor Anonymity.</u>** Given the facts alleged in the Complaint, and the wealth of case law in this Circuit granting pseudonym status to parties in cases involving sexual assault allegations, the District Court's finding that pseudonym protection is not warranted in John Doe's case signifies that the District Court acted arbitrarily or by general rule, "failed to take relevant factors into account" and acted "on the basis of legal and factual misapprehensions respecting those factors." *James*, 6 F.3d at 242.

**(a)**    The District Court abused its discretion in failing to consider a significant factor in cases brought by persons falsely accused of sexual misconduct—the irreparable harm that John Doe's reputation would suffer if his identity is disclosed in an action through which he is seeking to clear his name. Should John Doe be forced to proceed under his real name, he will suffer the very harm he is trying to prevent through his lawsuit against Jane Doe. *See* Point II.C.

**(b)**    The District Court abused its discretion in finding that the *James* factors weigh against pseudonym protection by: (1) discounting the very caselaw that it cited in support of the first *James* factor as irrelevant to John Doe's action; (2) relying on erroneous factual and legal premises to find that the second *James* factor was "neutral," including that John Doe needed to demonstrate that there were "aggravating factors" which favored pseudonymity and even

17

though John Doe specifically alleged "retaliatory physical and mental harm;" (3) exhibiting a general disapproval of pseudonym protection in cases involving private parties in finding that the fourth *James* factor weighed "significantly against" pseudonym protection; and (4) relying on erroneous factual premises concerning Jane Doe's purported confusion over the identity of Sue Roe and witnesses named in the Complaint to find that the fifth *James* factor weighs against anonymity. *See* Pt. II.D.

### III.    <u>No Balancing of John Doe's Privacy Interest Against Public Access</u>.

The District Court did not consider relevant case law, John Doe's individual, specific privacy concerns, or the public's ability to access the filings and attend any hearings in the case. The District Court instead denied John Doe's motion on the ground that mutual pseudonymity undermines access to judicial proceedings, though the court declined to express an opinion as to whether Jane Doe could proceed by pseudonym. The District Court's failure to engage in the requisite balancing test suggests that its ruling was based on general disapproval of party anonymity for plaintiffs accused of sexual assault. *See* Pt. III.

# **ARGUMENT**

## **I.**

## **THE STANDARD OF REVIEW**

The Court reviews a district court's pseudonymity decision under an abuse-of-discretion standard. *Pub. Citizen*, 749 F.3d at 273; *James*, 6 F.3d at 239 (4th Cir. 1993). "Abuse of discretion" can occur in several ways. *James*, 6 F.3d at 239.

*First*, an abuse of discretion can occur when a district court fails or refuses, either expressly or implicitly, to exercise any discretion at all, "deciding instead as if by general rule, or even arbitrarily, as if neither by rule nor discretion." *Id.*

*Second*, a district court may abuse its discretion by failing to take into account "judicially recognized factors which constrain the exercise of its discretion." *Id.*

*Third*, discretion may be abused "by an exercise that is flawed by erroneous factual or legal premises. *Id.*

The District Court abused its discretion in each of the above-described ways when it denied John Doe's pseudonym motion.

## **II.**

## **THE PARTICULAR CIRCUMSTANCES OF JOHN DOE'S CASE FAVOR ANONYMITY**

### A.    **The *James* Factors.**

In *James*, the Court held that the openness of judicial proceedings is not an absolute bar to proceeding pseudonymously and that, as a matter of a district court's

discretion, the use of pseudonyms may be permitted where the privacy or confidentiality concerns of a party are "sufficiently critical." 6 F.3d at 238. There is, further, "a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted." *Id.* In *Public Citizen*, the Court affirmed that "in exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym." 749 F.3d at 273.

In *James*, the Court set forth the following factors as "guides to a proper exercise of discretion": 1) whether the justification asserted by the requesting party is merely to avoid the annoyance, embarrassment or criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature; 2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; 3) the ages of the parties whose privacy interests are sought to be protected; 4) whether the action is against a governmental or private party; and 5) the risk of unfairness to the opposing party to allow an action against it to proceed anonymously. 6 F.3d at 238. In *Public Citizen*, the Court described the *James* factors as "nonexclusive." 749 F.3d at 273.

20

**B.    Several Courts in This Circuit Have Accorded Pseudonym
Status To Students Accused Of Sexual Misconduct.**

Several courts in the Fourth Circuit have granted pseudonym protection to students accused of sexual misconduct, and their accusers, in litigation against educational institutions and individual administrators. *See Virginia Polytechnic Inst.*, 2022 WL 972629, at *2; *B.R. v. F.C.S.B.*, No. 1:19-cv-00917, 2020 WL 12435689, at *24-25; *Doe v. Virginia Polytechnic Inst.*, No. 7:18-cv-170, 2018 WL 5929647, at *2 (W.D. Va. Nov. 13, 2018); *Painter v. Doe*, 3:15-cv-369-MOC, 2016 WL 376466, at *6 (W.D.N.C. July 13, 2016); *Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d at 593-594; *Alger*, 317 F.R.D. at 40. While this case is strictly between wrongfully accused and accuser, the principles relied upon in these cases apply here.

In *Virginia Polytechnic Inst.*, 2022 WL 972629, at *2, concerning the plaintiff's due process claim, the court found that pseudonym protection was warranted because "an allegation of sexual assault…involves sensitive and highly personal facts that can invite harassment and ridicule" and if the case proceeded to discovery "the allegations are likely to shine a light on details of [the plaintiff's] and the female student's private lives." *Id.* The court also found that there was a risk of retaliatory physical and mental harm to the plaintiff and his accuser and no risk of unfairness to the defendants because they were aware of his identity. *Id.* at **2-3. On these grounds, the court found that the *James* factors weighed in favor of granting

21

pseudonym protection to the plaintiff. *Id.* The court also considered that disclosure of the plaintiff's name would undermine the relief he was seeking in his lawsuit—to expunge his record. *Id.* at *4. The court also took into account that the confidential details of the plaintiff's Title IX investigation would inevitably become part of the litigation. *Id.*

In *Virginia Polytechnic Inst.*, 2020 WL 1287960, at **3-5 (Mar. 18, 2020), the court granted pseudonym protection to the plaintiff and his accuser even though (i) the plaintiff's lawsuit named private individuals as defendants and (ii) the plaintiff had faced public, criminal charges relating to domestic violence (which were dismissed) and the accuser testified with respect thereto. *Id.* at **3-5. The court found that the first and second *James* factors weighed in favor of anonymity because *inter alia* the Title IX proceeding and related sanction had remained confidential. *Id.* at **3-4. The court also found that the fifth *James* factor weighed in favor of anonymity. *Id.* at *4. Likewise, in *Virginia Polytechnic Inst.*, 2018 WL 592647, at *4, the court found that, even though the plaintiff named private individuals as defendants, pseudonym protection was warranted for the plaintiff and his non-party accuser because the first, second and fifth *James* factors weighed in favor of anonymity. *Id.* at **3-5.

Given that John Doe's circumstances track those of the plaintiffs in the Virginia Tech cases, the District Court should have found that pseudonym protection is warranted for John Doe. JA4-5, JA14-31.

In *Alger*, 317 F.R.D. at 40-41, the court granted pseudonym protection to the plaintiff and his accuser, finding that the first, second, third and fifth *James* factors weighed in favor of anonymity. *Id.* One issue noted by the court with respect to the second *James* factor—risk of retaliatory mental and physical harm to the plaintiff and his accuser—was that the identification of the plaintiff would lead to "some persons seeking to inflict physical or mental harm on [the plaintiff]…especially in light of the ongoing national conversation about sexual misconduct on college campuses." 317 F.R.D. at 40. While the court took into account that the litigation had received a "fair amount of press for a relatively small community" it was but one consideration. In *Alger*, the court also considered an additional factor which impacted the plaintiff's case, "irreparable harm to his name." *Id.* at 42. The plaintiff was trying to clear his name through an expungement of his disciplinary record and "any records check or Internet search would reveal the very information he is now trying to expunge." *Id.* Similarly, John Doe is trying to restore his good name through his action against Jane Doe. JA47. *See* JA32-35.

In *Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d at 585, 593 & n. 20, in which the plaintiff had prevailed on his claims that his due process and First

Amendment rights were violated, the court granted pseudonym protection for the plaintiff and his accuser, even though their names had been disclosed in the accuser's state court action to obtain a protective order. With respect to the first *James* factor, the court held that "there can be no doubt that the litigation here focuses on 'a matter of [a] sensitive and highly personal nature'" because the plaintiff had "been accused of sexual misconduct, the *mere accusation of which*, if disclosed, can invite harassment and ridicule." *Id.* at 593 (citation omitted) (emphasis added). With respect to the second *James* factor, the court found it "possible that plaintiff could be targeted for 'retaliatory physical or mental harm' based on the accusations alone." *Id.* at 593. The court also found that the risk of harm to the plaintiff was "more serious" because the case had drawn "significant media attention." *Id.* The "significant media attention" was a blog post by Eugene Volokh ("Volokh") on The Volokh Conspiracy website which, at the time, was published by The Washington Post. *Id.* & n. 19.[1] The court further found that the fifth *James* factor weighed in

---

[1] Volokh's blog is now published by Reason magazine, "the nation's leading libertarian magazine." *See* https://reason.com/about/ (last visited on Feb. 20, 2023). At the time the District Court denied John Doe's pseudonym motion, the underlying action had not received any media attention. Volokh, who moved to appear as amicus counsel in opposition to John Doe's appeal, drew attention to this case by sensationalizing the District Court's ruling on The Volokh Conspiracy website, describing John Doe's case as a "#TheyLied Libel Case." *See* Gorycki Decl., Docket #9, Gorycki Decl., Ex. 2; https://reason.com/volokh/2023/01/18/no-pseudonymity-in-theylied-libel-case-alleging-false-claims-of-sexual-assault-at-college/ (last visited on Feb, 20, 2023).

favor of anonymity. *Id.* at 594. In granting the plaintiff's motion, the court also considered the confidentiality of the Title IX proceeding that was the basis for the plaintiff's claims and the social stigma that would be "forever associated" with the plaintiff's name if his identity was revealed. *Id.* at 593-594. While John Doe's case did not garner media attention at the time it was filed, his circumstances are strikingly similar to the plaintiff in *Rector & Visitors*.

In *B.R. v. F.C.S.B.*, No. 1:19-cv-00917, 2020 WL 12435689, at **24-26 (E.D. Va. Mar. 10, 2020), the alleged victim of multiple sexual assaults years prior when she attended middle school moved for pseudonym protection. The court granted pseudonym status to the plaintiff and, among others, two named defendants who allegedly perpetrated the sexual assaults. The court recognized the "seriousness of the alleged offenses and the wide-ranging ramifications that these allegations may hold for each of the named parties" and found it necessary to "not only protect the privacy interests of the accuser, but also the accused." *Id.* at *24. John Doe faces the same wide-ranging ramifications. JA4-42.

## C.    The District Court Abused Its Discretion in Failing to Consider Irreparable Harm to John Doe's Reputation.

The District Court failed to consider a significant factor in cases brought by persons falsely accused of sexual assault—the irreparable harm that John Doe's reputation would suffer if his identity is disclosed in an action through which he is seeking to clear his name. *See Public Citizen*, 749 F.3d at 273 (*James* factors are

nonexclusive); *Alger*, 317 F.R.D. at 42 (irreparable harm tipped in favor of pseudonym); JA55-62. Courts in this Circuit have recognized the seriousness and "wide-ranging ramifications" of sexual assault allegations and that denying pseudonym protection in such cases would force the wrongfully accused to have their names "forever associated in the public mind with an accusation that carries a significant social stigma." *See B.R.*, 2020 WL 12435689, at *24; *Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d at 594. Indeed, "what justifies the use of pseudonyms here is plaintiff's status as an accused perpetrator of sexual misconduct." *Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d at 593. Should John Doe be forced to proceed under his real name, he will suffer the very harm that he is trying to prevent through his lawsuit against Jane Doe. *Virginia Polytechnic Inst.*, 2022 WL 972629, at *4 (noting that identification of the plaintiff in the lawsuit would greatly undermine the relief to which he may be entitled); *Alger*, 317 F.R.D. at 42 (irreparable harm to plaintiff's name was relevant factor that tipped in favor of anonymity). As stated in John Doe's moving brief:

> In light of the nature of this case, private and intimate details regarding the lives of John Doe and Jane Doe will be at issue. Moreover, the reason for bringing the lawsuit is to restore John Doe's good name. If John Doe is required to disclose his identity in this litigation, the harm would already be done. John Doe's name will forever be publicly associated with … sexual misconduct.

JA47. The District Court should have considered the probability of irreparable harm to John Doe's reputation because—like so many plaintiffs before him who have been

accorded pseudonym status—John Doe's claims center around confidential Title IX proceedings through which Jane Doe knowingly lodged false sexual assault allegations against John Doe in order to exact revenge. JA17-31. *See* discussion, *supra*, at Pt. II.B. In denying the pseudonym motion, the District Court failed to recognize this important distinction between John Doe's case and the garden-variety defamation case. JA61. John Doe should not have to choose between litigating the underlying action or causing the very harm he is seeking to prevent by re-filing the case in his own name. JA61-62. *See James*, 6 F.3d at 242 (district court's denial of request to proceed anonymously "effectively cut off a claim that, if proven, is one of great civil wrong").

## D. The District Court Abused Its Discretion In Finding That the *James Factors* Weigh Against Pseudonym Protection.

The District Court's determination that the *James* factors weigh against John Doe proceeding by pseudonym appears to be arbitrary as opposed to guided by "judicially recognized factors" which constrain the exercise of its discretion. *James*, 6 F.3d at 240. The determination is also flawed because it is grounded in erroneous factual and legal premises. *Id.*

### 1. The District Court Discounted the Very Cases It Relied Upon.

Regarding the first *James* factor, the District Court relied on several opinions from courts in this Circuit to correctly find that "plaintiff desires to proceed pseudonymously in order to preserve his privacy in a matter that is sensitive and

27

highly personal." JA57. The Court made no express determination as to the weight of this finding, though the first *James* factor weighs in favor of anonymity. John Doe's pseudonym motion cites the very same opinions relied on by the District Court (JA45, JA47, JA57), yet the District Court opined that John's reliance on those opinions was "wrong," and erroneously found that "the considerations in those cases do not apply here." JA61. *See* discussion *supra* at Point II.B.

## 2.    The Second *James* Factor Weighs In Favor of Anonymity.

John Doe's status as a person who has been falsely accused of sexual misconduct puts him at "risk of retaliatory physical and mental harm," if he is publicly identified in the underlying action. JA57 (mere accusation of sexual misconduct, if disclosed, can invite harassment and ridicule). John Doe's lawsuit against Jane Doe is distinguishable from the garden-variety defamation case because it centers around false and defamatory statements made within the context of a Title IX disciplinary proceeding and Jane Doe's use of that proceeding to exact revenge against John Doe. JA17-31. The Title IX proceeding is, further, a subject of John Doe's abuse of process claim. JA34-36.

Federal law recognizes that participants in Title IX proceedings can become targets of retaliation and, for this reason, requires that the identity of "any individual who has been reported to be the perpetrator of sex discrimination" be kept confidential. 34 C.F.R. § 106.71. Courts in this Circuit have considered the

confidential nature of Title IX proceedings when according pseudonym status to the falsely accused in subsequent litigation against universities and their administrators. *Virginia Polytechnic Inst.*, 2022 WL 972969, at \*4; *Virginia Polytechnic Inst.* 2020 WL 1287960, at \*\*3-4; *Virginia Polytechnic Inst.*, 2018 WL 5929647, at \*3; *Rector & Visitors*, 179 F. Supp. 3d at 593.

The District Court correctly recognized that the *mere accusation* of sexual misconduct can invite "'harassment and ridicule.'" JA57 (citing *Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d at 593)[2]. *See* JA48. The Court then erroneously determined that the second *James* factor was "neutral," as opposed to favorable to John Doe, because (i) John Doe failed to "produce evidence" to support more than a mere general fear of retaliation or embarrassment; (ii) there did not appear to be any "aggravating factors beyond the subject matter of the sexual assault allegation;" and (iii) considerations about the risk of harm to Jane Doe and Sue Roe did "not affect whether the court should allow plaintiff to pursue this action pseudonymously." JA57-58.

*First*, the cases that the District Court relied upon to read an evidence requirement into the second *James* factor are distinguishable from the present case. JA58. *Student A v. Liberty Univ., Inc.*, No. 6:20-cv-00023, 2022 WL 1423617, at

---

[2] Once again, the District Court relied on a case cited by John Doe which it later discounted as irrelevant. JA48, JA57, JA61.

*13 (W.D. Va. May 5, 2022), concerned a class action lawsuit brought by students seeking reimbursement of room and board and other fees charged during the COVID-19 pandemic. Even so, despite several *James* factors weighing *against* pseudonym protection, the court accorded pseudonym status to the plaintiffs because the complaint contained allegations concerning their fear of retaliation. *Id.* In *Doe v. North Carolina Central Univ.*, No. 1:98-cv-1095, 1999 WL 1939248, at *3 (M.D.N.C. Apr. 15, 1999), which significantly pre-dates recent judicial opinions about pseudonym treatment in sexual assault cases, the plaintiff, who sued her employer after she was allegedly raped by her supervisor, did not "allege *any* potential retaliation or harassment if her name [was] released in court documents." *Id.* (emphasis added). The court further found that there was a significant risk of unfairness to the defendant because the plaintiff publicly leveled charges against the university and her attorney made several statements to the media about the case—circumstances which are not present in John Doe's case. *Id.* at *4.

The District Court's determination was also grounded in the erroneous factual premise that John Doe failed to (i) "produce evidence" of more than a general fear of retaliation and (ii) allege that Jane Doe's false sexual assault allegations were "widely circulated." JA57-58. The Complaint alleges that John Doe has already experienced retaliation due to Jane Doe's circulation of the false allegations and that it is likely to continue: (a) Jane Doe and Sue Roe retaliated against John Doe in an

30

effort to destroy his academic career and future career goals; (b) the further spread of false allegations that John Doe is a perpetrator of sexual assault is ever present; (c) Jane Doe spread false sexual assault allegations about John Doe across Tulane's campus and to students studying abroad; (d) John Doe's parents were notified that it was not safe for him to be on the Tulane campus and they needed to pick him up and bring him home; (e) John Doe's mother flew to Louisiana and brought John Doe home; (f) due to the mental anguish and heightened anxiety that John Doe experienced as a result of the false allegations, he withdrew from Tulane; (g) Jane Doe subsequently contacted John Doe's friends in an effort to determine John's future career plans; (h) Jane Doe falsely accused John Doe of stalking and harassment in an unsuccessful civil court petition for a TRO; and (h) John Doe has already suffered emotional distress, reputational harm, loss of educational and career opportunities and psychological damages. JA4-5, JA14-17, JA30-31, JA34-36.

*Second*, the District Court's determination regarding the second *James* factor was grounded in the erroneous legal premise that "aggravating factors" are required in order to favor pseudonymity. JA58. Neither *James* nor *Public Citizen* enumerate any aggravating factors that should be considered. A party seeking pseudonym protection need only demonstrate that identification poses a "risk" of retaliation, which John Doe clearly articulates in the Complaint. *James*, 6 F.3d at 238; *Public Citizen*, 749 F.3d at 273; JA56. *See* JA4-5, JA14-17, JA30-31, JA34-36. This

determination further contradicts the District Court's acknowledgment that *mere accusations* of sexual misconduct, if disclosed, can invite harassment and ridicule. JA57. *See Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d at 593. Indeed, several cases in this Circuit—and cited in the District Court's opinion—have accorded pseudonym status to parties in cases involving sexual misconduct allegations without consideration of "aggravating factors" such as media reporting. *Virginia Polytechnic Inst.*, 2022 WL 972629, at *2; *Student A v. Liberty Univ., Inc.*, 602 F. Supp. 3d at 919; *Virginia Polytechnic Inst.*, 2018 WL 5929647, at *3; *Painter*, 2016 WL 3766466, at *6.

*Third*, the District Court's determination was based on the erroneous legal premise that "potential harm to Jane Doe and Sue Roe…*does not affect* whether the court should allow plaintiff to pursue this action pseudonymously." JA58 (emphasis added). On the contrary, the consideration of harm to non-parties such as Sue Roe and other student witnesses identified in the Complaint is a "critical" part of determining whether the *requesting party* can proceed by pseudonym. *Public Citizen*, 749 F.3d at 273; *James*, 6 F.3d at 238; *Virginia Polytechnic Inst.*, 2022 WL 972629, at *2; *Virginia Polytechnic Inst.*, 2020 WL 128760, at **3-5 (W.D. Va. Mar. 18, 2020); *Virginia Polytechnic Inst.*, 2018 WL 5929647, at *3; *Alger*, 317 F.R.D. at 40. John Doe moved for pseudonym protection for himself, Jane Doe and Sue Roe, but the District Court declined to decide whether Jane Doe and Sue Roe

could be named by pseudonym. JA50, JA62. Since Jane Doe appeared on the eve of

John Doe's filing of this appellant's brief using her real name, she apparently has no

concerns that she will face retaliation for her alleged false and defamatory statements

against John Doe. Docket ## 13-15.[3] This does not change that, at the time it denied

John Doe's motion, the District Court failed to consider the risk of retaliatory harm

to Jane Doe, Sue Roe and the witnesses identified by their initials in the Complaint.

The risk of retaliation to Sue Roe and those witnesses remains a consideration,

particularly since they were identified within the context of a confidential Title IX

proceeding. JA7-31; 34 C.F.R. § 106.71.

### 3.    The Fourth *James* Factor Does Not Carry "Significant" Weight.

The District Court found that the fourth *James* factor "weighs significantly

against allowing plaintiff to proceed pseudonymously" because Jane Doe is a private

party. JA59. Courts in this Circuit have granted pseudonym motions in cases

involving private parties, even though the fourth *James* factor weighed against

proceeding anonymously. *Virginia Polytechnic Inst.*, 2020 WL 1287960, at **4-5;

*B.R.*, 2020 WL 12435689, at *26; *Virginia Polytechnic Inst.*, 2018 WL 5929647, at

**3-4. In *Virginia Polytechnic Institute*, 2022 WL 972629, at *3, cited by the District

---

[3] Jane Doe's voluntary self-identification for purposes of this appeal seems to be a continuation of her vengeful campaign to destroy John Doe's reputation. JA4-42. Based on her past conduct, she likely hopes to out John Doe through the public disclosure of her identity. JA4-42.

Court, the fourth *James* factor was determined to be *neutral* even though individual, private parties had been named as defendants in the complaint. JA59. *Doe v. Pittsylvania County*, 844 F. Supp. 2d 724, 730 (W.D. Va. 2012), upon which the District Court also relied, did not concern sexual assault allegations and decided whether a plaintiff suing a government entity has more of a right to pseudonym protection than a plaintiff suing a private party.

The District Court also cited cases outside the Circuit in support of its finding, neither of which involved allegations of sexual assault (JA59):

*Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979), concerned allegations of discriminatory hiring practices which the Fifth Circuit found were not a matter of a highly personal and sensitive nature. The court further held that basic fairness dictated that defendants' accusers proceed under their real names because the defendant law firms had been named in the case and stood "publicly accused of serious violations of federal law." *Id.* In contrast, the District Court *did* find that the allegations in this case involve matters of a highly personal and sensitive nature (JA58) and, here, John Doe has not named Jane Doe in the Complaint. JA4. Jane Doe's recent, voluntary disclosure of her identity is not the equivalent of John Doe naming her in the first instance and then seeking pseudonym protection for himself.

34

*A.B.C. v. XYZ Corp.*, 282 N.J. Super. 494, 505 (App. Div. 1995), involved state law employment discrimination claims. The court noted that cases involving the revelation of highly private and personal information, a genuine risk of physical harm, or in which the very relief sought would be defeated by revealing the party's identity could warrant pseudonym protection. *Id.* Under the reasoning of *A.B.C.*, there are "compelling circumstances" for John Doe to proceed by pseudonym in this case. JA4-5, JA14-17, JA34-36, JA47, JA58. An additional concern in *A.B.C.* was that, if the case proceeded to a "money verdict" *both* the plaintiff and defendant would need to be identified for any judgment to be enforceable. 282 N.J. Super. at 505. This differs from the District Court's finding that it would be "fundamentally unfair" for John Doe to "'clear his name'" and "wield a potential judgment against Jane Doe to his advantage but hide under a shield of anonymity if unsuccessful." JA59. Indeed, the District Court failed to consider that John Doe has not named Jane Doe or sought to expose her name while "shielding" his identity. JA4, JA50. Again, Jane Doe's recent, voluntary disclosure of her identity does not change that John Doe *did not* seek to publicly identify Jane Doe while attempting to shield himself from identification.

In its search for cases involving mutual pseudonymity, the District Court does not appear to have considered *B.R.*, 2020 WL 12435689, at *26,[4] in which the defendants, who had been accused of sexually assaulting the plaintiff, argued that it would be fundamentally unfair to allow plaintiff to proceed by pseudonym. While the court found that the fourth *James* factor weighed against pseudonym protection for the plaintiff, it determined that the "most appropriate remedy" was for *all parties* to use their initials as the case proceeded. *Id.*

For the above stated reasons, the District Court's determination that the fourth *James* factor weighs "significantly against" anonymity, and serves as a basis for denying John Doe's pseudonym motion, appears to be grounded in a general disapproval of party anonymity in cases where private parties are involved, rather than consideration of relevant case law and the specific circumstances of John Doe's case. *See James*, 6 F.3d at 239.

### 4.    The Fifth *James* Factor Favors Anonymity.

Regarding, the fifth *James* factor, the District Court correctly found that Jane Doe is aware of plaintiff's identity and, for that reason, would not be prejudiced. JA59. However, the District Court then relied on the erroneous factual premise that "pervasive anonymity" in the Complaint "could lead to difficulty and confusion for

---

[4] John Doe acknowledges that this case was not cited in his moving brief. It is cited herein because the District Court apparently undertook a search for cases involving mutual pseudonymity. JA59.

Jane Doe during discovery" to conclude that this factor weighed *against* pseudonymity. JA60. John Doe did not represent to the District Court that he was unwilling to conduct discovery using the real names of Sue Roe and other persons identified in the Complaint, which could easily be dealt with through a protective order. JA43-50. In addition, per John Doe's allegations, the identities of Sue Roe and the witnesses identified by their initials in the Complaint are individuals personally known to Jane Doe. JA11, JA14, JA20-25, JA27-30.

Given the facts alleged in the Complaint, and the wealth of case law in this Circuit granting pseudonym status to parties, and non-parties, in cases involving sexual assault allegations, the District Court's finding that the *James* factors weigh against John Doe proceeding by pseudonym signifies that the District Court acted arbitrarily, failed to "take relevant factors into account" and acted "on the basis of legal and factual misapprehensions respecting those factors." *James*, 6 F.3d at 242.

### III.

### THE DISTRICT COURT DID NOT WEIGH JOHN DOE'S PRIVACY INTEREST AGAINST PUBLIC ACCESS

The "ultimate test for deciding if a plaintiff should proceed anonymously is whether plaintiff has a substantial privacy right which outweighs the customary and constitutionally embedded presumption of openness in judicial proceedings." *Virginia Polytechnic Inst.*, 2018 WL 5929647, at *2 (internal citations omitted).

37

Several courts in this Circuit have held that, in cases involving sexual assault allegations, the parties' privacy interests outweigh the presumption of openness in judicial proceedings—even in cases where the public has a heightened interest in the underlying litigation. *See Virginia Polytechnic Institute*, 2022 WL 972629, at *4; *B.R.*, 2020 WL 12435689, at *24; *Virginia Polytechnic Inst.*, 2020 WL 1287960, at *5; *Virginia Polytechnic Inst.*, 2018 WL5929647, at **2, 4; *Alger*, 317 F.R.D. at 42; *Rector & Visitors*, 179 F. Supp. 3d at 594.

In *Virginia Polytechnic Institute*, 2022 WL 972629, at *4, the court acknowledged that "issues surrounding the way in which colleges and universities address allegations of sexual assault … and… how courts address lawsuits arising out of the handling of such accusations are of great interest to the public." *Id.* Even so, the court found that the "personal and sensitive nature of the allegations against Doe and the potential for details of the investigation becoming part of this litigation outweigh the need for the public to know his identity at this time." *Id.* The court considered that the public could still access "pleadings, opinions and orders and attend hearings." *Id.* JA46. *See also Virginia Polytechnic Inst.*, 2018 WL5929647, at *2.

The public does not have the same interest in John Doe's lawsuit, between private individuals, as it might have in a case against the government or an institution accused of violating federal law. JA61 (noting that plaintiff is not "challenging his

expulsion from Tulane" in this lawsuit). Even if there were a significant public interest in this case, it does not outweigh the privacy concerns raised by the subject matter of the lawsuit, the risk of retaliation to John Doe and the social stigma that could be forever associated with John Doe's name should he be forced to proceed in his own name. *See* discussion, *supra*, at Pt. II. John Doe's case also raises additional privacy concerns, because it centers around confidential Title IX proceedings. *See Virginia Polytechnic*, 2022 WL972629, at *4; JA17-31.

The District Court failed to balance John Doe's interest in anonymity against the public's interest in open judicial proceedings. *Public Citizen*, 749 F.3d at 273; JA56-57, JA60. It did not consider the above cited case law, privacy concerns or the public's unfettered ability to access the filings and attend any hearings in this case. JA60-62. The District Court erroneously found that John Doe failed to "address the risk that pseudonymous lawsuits have in eroding public access to proceedings." JA6. John Doe's motion expressly states that:

> the crucial interests served by open judicial proceedings are not compromised by allowing party to proceed anonymously. If a plaintiff is granted leave to proceed under a pseudonym, the public is not denied its right to attend the proceedings or inspect the court's opinions and orders on the underlying constitutional issue.

JA46.

The District Court denied John Doe's motion on the ground that mutual pseudonymity undermines access to judicial proceedings, but made no

determination as to whether Jane Doe should be named by pseudonym. JA61-62. The District Court viewed John Doe's motion solely as a request to proceed as a pseudonymous plaintiff. JA55. Yet, in relying on principles concerning mutual pseudonymity to deny his motion, the District Court failed to weigh John Doe's *individual* and specific privacy interests against public access to determine whether *he* should be permitted to proceed by pseudonym. JA60-62.

Regarding mutual pseudonymity, the District Court cited concerns about the difficulty the media could face in monitoring "sexual assault-related libel or slander suits." JA60. However, when evaluating the *James* factors, the District Court noted that John Doe *had not* alleged that the sexual assault allegations at issue "evoked passionate scrutiny in the media." JA58.

While the District Court correctly found that Plaintiff cited no "case in which a plaintiff in a defamation or libel action was allowed to proceed pseudonymously against an alleged victim of sexual assault," (JA61), this discounted the significant differences between John Doe's case—centered around a confidential Title IX proceeding—and the garden variety defamation case. *See* discussion, *supra*, at Pts. II.C, D.2. *Roe v. Does 1-11*, No. 20-cv-3788, 2020 WL 6152174, at *5 (E.D.N.Y. Oct. 14, 2020), the case cited by the District Court to find the lack of case law "persuasive" in denying John Doe's motion, bears little similarity to John Doe's circumstances.

40

In *Roe*, a case which did not concern university disciplinary proceedings, the plaintiff sought to identify his accusers by name while seeking pseudonym protection for himself, which the court was "loath to allow." *Id.* The court was concerned about the emotional distress and reputational harm that could befall the plaintiff's accusers if they were named in the lawsuit. 2020 WL 6152174, at *5. In contrast, John Doe did not name Jane Doe in the Complaint. Jane Doe's recent, voluntary disclosure of her identity, (Docket ## 13-15), demonstrates that Jane Doe has no concerns about proceeding in her own name and suggests that she is attempting to align this case with those cases in which the accused seek to proceed by pseudonym against the named accused. However, Jane Doe's voluntary disclosure of her identity is not the equivalent of John Doe naming her in the Complaint. The fact is that John Doe attempted to shield the identities of all participants in the underlying, confidential Title IX proceedings, including Jane Doe. JA4-51.

In *Roe*, the court found that cases involving university disciplinary proceedings provided little guidance. 2020 WL 6152174, at *5 & n. 3. As discussed in detail above, the university proceedings against John Doe are highly relevant to John Doe's claims against Jane Doe, and the privacy concerns raised by plaintiffs seeking pseudonym protection in actions against universities are aligned with John Doe's concerns in this action. *See* discussion, *supra*, at Point II.

41

In conducting research for cases in which individuals falsely accused of sexual assault were allowed to proceed by pseudonym, the District Court, again, appears to have overlooked *B.R.*, 2020 WL 12435689, at *24, in which the falsely accused were permitted to proceed by their initials in order to protect their privacy interests and the "seriousness of the alleged offenses and the wide-ranging ramifications that the[] allegations may hold for each of the named parties." *Id.* While *B.R.* involved the accuser's claims against the falsely accused, the same principles apply here.

The District Court's failure to balance John Doe's individual privacy interests against the public's right of access to the underlying action suggests that the District Court's ruling was based on general disapproval of party anonymity for plaintiffs seeking redress for false sexual assault allegations. *See James*, 6 F.3d at 242.

## CONCLUSION

For the reasons set forth above, the Court should (i) reverse the District Court's denial of John Doe's pseudonym motion, allowing John Doe to proceed by pseudonym in the underlying action; (ii) remand the case to the District Court, and (iii) grant such other and further relief as this Court deems just and proper.

Dated:          February 27, 2023

                              Respectfully Submitted,

                                /s/ *Kara L. Gorycki*    
                              Kara L. Gorycki
                              Andrew T. Miltenberg
                              Nesenoff & Miltenberg, LLP
                              363 Seventh Ave., 5th Floor
                              New York, New York 10001
                              (212)736-4500
                              kgorycki@nmllplaw.com
                              amiltenberg@nmllplaw.com

                              *Attorneys for Plaintiff-Appellant*
                              *John Doe*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**Effective 12/01/2016**

No. __23-1058__      **Caption:** John Doe v. Jane Doe

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines.    Appellee's Opening/Response Brief  may not exceed 15,300 words or 1,500 lines.  A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type.  See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words.  Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓]   this brief or other document contains ____10,094____ [*state number of*] words

[ ]   this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓]   this brief or other document has been prepared in a proportionally spaced typeface using
MS Word
_____ [*identify word processing program*] in
Times New Roman, 14 pt.
_____ [*identify font size and type style*]; **or**

[ ]   this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Kara L. Gorycki
_____

Party Name appellant
_____

Dated: 2/27/2023
_____