IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
Record No. 23-1058

JOHN DOE,

Plaintiff-Appellant,

v.

JANE DOE,

Defendant-Appellee.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH

_____

DEFENDANT-APPELLEE'S RESPONSE BRIEF

_____

Kelly Margolis Dagger
James M. Weiss
ELLIS & WINTERS LLP
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000

*Counsel for Defendant-Appellee*
*Lily Chin ("Jane Doe")*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _23-1058_        Caption: _John Doe v. Jane Doe_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Lily Chin, named as "Jane Doe"_
(name of party/amicus)

_____

who is _____Defendant-Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO

If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO

If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO

If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO

If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Kelly Margolis Dagger    Date: 3/29/2023

Counsel for: Lily Chin, named as "Jane Doe"

- 2 -

## TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................i

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.....1

STATEMENT OF THE ISSUE..................................................................2

     WHETHER THE DISTRICT COURT PROPERLY EXERCISED ITS
     DISCRETION TO DENY MR. DOE'S MOTION FOR LEAVE TO
     PROCEED UNDER PSEUDONYM.

STATEMENT OF THE CASE....................................................................2

SUMMARY OF THE ARGUMENT .........................................................12

ARGUMENT .......................................................................................14

     THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION
     TO DENY MR. DOE'S MOTION FOR LEAVE TO PROCEED
     UNDER PSEUDONYM.........................................................................14

          *Standard of Review*...............................................................14

          *Discussion* ...........................................................................15

          A.    The District Court Exercised Appropriate Discretion in
               Balancing the James Factors ....................................17

              1.    Mr. Doe does not challenge the district court's finding
                   that he sought to preserve privacy in a sensitive and
                   highly personal matter, and the district court properly
                   concluded that cases supporting that finding did not
                   otherwise support Mr. Doe's argument..........................17

i

2.    The district court exercised appropriate discretion in assessing whether identification would pose a risk of retaliatory physical or mental harm and finding that this factor was neutral.....................................................19

    a.    The district court considered Mr. Doe's concerns about reputational harm .......................19

    b.    The university Title IX process and the Title IX anti-retaliation regulation do not support Mr. Doe's request to proceed by pseudonym .............21

    c.    The district court did not commit legal or factual error by finding that Mr. Doe had not produced evidence of more than a general fear of retaliation or embarrassment ................................23

    d.    The district court did not rule that a party seeking to proceed by pseudonym must establish "aggravating factors." ...........................26

    e.    The district court did not abuse its discretion by determining that the alleged risk of harm to others did not support Mr. Doe's request to proceed by pseudonym.........................................27

3.    Mr. Doe does not challenge the district court's finding that the age of the parties weighed against anonymity ....................................................................31

4.    The district court correctly rejected Mr. Doe's assertion that his case was against both the government and a private party and exercised appropriate discretion to find that the fourth *James* factor weighed against anonymity......................32

ii

5.      The district court correctly found that there was a risk of prejudice to Ms. Chin and exercised appropriate discretion to find that this factor weighed against anonymity ................................................................37

B.      The District Court Properly Balanced Mr. Doe's Stated Interest in Anonymity Against the Public's Interest in Openness ...................................................................................43

1.      The district court correctly determined that the extraordinary circumstances warranting anonymity in cases against universities do not apply to Mr. Doe's defamation case against an individual ............................43

2.      The district court correctly found that Mr. Doe failed to address the risk of eroding public access to court proceedings ...................................................................49

3.      The district court did not err by discussing "mutual pseudonymity" and the impact of pseudonymity on the media ..........................................................................50

C.      Mr. Doe's Voluntary Inclusion of Personally Identifying Details in the Complaint Supports the District Court's Decision to Deny His Request to Proceed by Pseudonym .......51

CONCLUSION ..........................................................................................53

CERTIFICATE OF COMPLIANCE .......................................................55

CERTIFICATE OF SERVICE ..................................................................56

TABLE OF AUTHORITIES

Cases                                                                          Page

*A.B. v. C.D.*, No. 2:17-CV-5840-DRH-AYS,
    2018 WL 1935999 (E.D.N.Y. Apr. 24, 2018)......................................... 43-44

*A.B.C. v. XYZ Corp.*, 660 A.2d 1199 (N.J. Super. Ct. App. Div. 1995)......33, 34, 35

*B.R. v. F.C.S.B.*, No. 1:19-CV-00917-RDA-TCB,
    2020 WL 12435689 (E.D. Va. Mar. 10, 2020) ......................................36, 37

*B.R. v. F.C.S.B.*, 17 F.4th 485 (4th Cir. 2021)....................................................36, 42

*Bryant v. Core Contents Restoration, LLC,*
    No. 7:20-CV-00040-M, 2021 WL 1207719 (E.D.N.C. Mar. 30, 2021) .......29

*Carefirst of Md., Inc. v. Carefirst Urgent Care Ctr., LLC*,
    305 F.3d 253 (4th Cir. 2002) ....................................................................... 1-2

*Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541 (1949)...................................1

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)........................................14

*Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*,
    33 F.3d 390 (4th Cir. 1994) ................................................................... 25-26

*DTH Media Corp v. Folt*, 374 N.C. 292, 841 S.E.2d 251 (2020) ...........................22

*Doe v. Alger*, 317 F.R.D. 37 (W.D. Va. 2016) .....................................26, 44, 45, 46

*Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014)..........................................................41

*Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222 (S.D.N.Y. 2015)................................40

*Doe v. Delta Airlines, Inc.*, 672 F. App'x 48 (2d Cir. 2016) .................................40

*Doe v. Merten*, 219 F.R.D. 387 (E.D. Va. 2004)....................................................33

*Doe v. Moreland*, No. CV 18-800 (TJK),
    2019 WL 2336435 (D.D.C. Feb. 21, 2019)..............................................43, 48

*Doe v. Pittsylvania County*, 844 F. Supp. 2d 724 (W.D. Va. 2012)......18, 33, 34, 35

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ...........................................*passim*

*Doe v. Rector & Visitors of George Mason Univ.*,
    179 F. Supp. 3d 583 (E.D. Va. 2016) ..........................................22, 26, 44, 45

*Doe v. Rose*, No. CV-15-07503-MWF-JCX,
    2016 WL 9150620 (C.D. Cal. Sept. 22, 2016) ....................................... 39-40

*Doe v. Trs. of Ind. Univ.*, 577 F. Supp. 3d 896 (S.D. Ind. 2022)................39, 51, 53

*Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:18-CV-170,
    2018 WL 5929647 (W.D. Va. Nov. 13, 2018) ............... 21-22, 35, 36, 44, 50

*Doe v. Va. Polytechnic Inst. & State Univ.*,
    400 F. Supp. 3d 479 (W.D. Va. 2019)..........................................................45

*Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:19-CV-00249,
    2020 WL 1287960 (W.D. Va. Mar. 18, 2020) ...........................21, 35, 36, 44

*Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:19-CV-00249,
    2020 WL 1309461 (W.D. Va. Mar. 19, 2020) ..............................................45

*Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-CV-378,
    2022 WL 972629 (W.D. Va. Mar. 30, 2022) ........... 21, 33, 35-36, 44, 45, 46

*Feldstein v. Nash Cmty. Health Servs., Inc.*,
    51 F. Supp. 2d 673 (E.D.N.C. 1999) ...........................................................18

*Hill v. Carvana, LLC*, No. 1-22-CV-37, 2022 WL 1625020
    (M.D.N.C. May 23, 2022) ............................................................................26

*Infernal Tech., LLC v. Epic Games, Inc.*, 339 F.R.D. 226 (E.D.N.C. 2021)...........29

*In re Sealed Case*, 971 F.3d 324 (D.C. Cir. 2020).............................................15, 38

v

*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) ........................................... *in passim*

*Menaker v. C.D.*, No. 2:17-CV-5840-DRH-AYS, 2018 WL 5776533
    (E.D.N.Y. Nov. 1, 2018)...............................................................................44

*Mondragon v. Scott Farms, Inc.*,
    No. 5:17-CV-00356-FL, 2019 WL 489117 (E.D.N.C. Feb. 7, 2019)...........29

*Raymond U v. Duke Univ.*, 91 N.C. App. 171, 371 S.E.2d 701 (1988) ............ 47-48

*Richard S. v. Sebelius*, No. CA 3:12-007-TMC,
    2012 WL 1909344 (D.S.C. May 25, 2012) ............................................ 23-24

*Roanoke River Basin Ass'n v. Hudson*, 940 F.2d 58 (4th Cir. 1991) ............... 20-21

*Robinson v. Warden, Md. House of Corr.*, 455 F.2d 1172 (4th Cir. 1972).............18

*Roe v. Does 1-11*, No. 20-cv-3788- MKB-SJB,
    2020 WL 6152174 (E.D.N.Y. Oct. 14, 2020) .................................. 43, 46-47

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*,
    599 F.2d 707 (5th Cir. 1979) ............................................................33, 34, 35

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) .......................51

*Sloas v. CSX Transp. Inc.*, 616 F.3d 380 (4th Cir. 2010) .......................................52

*Student A v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901 (W.D. Va. 2022) ................23

*United States v. Al-Hamdi*, 356 F.3d 564 (4th Cir. 2004) ......................................31

*United States v. Atkins*, No. 97-4807, 1998 WL 153397
    (4th Cir. Apr. 3, 1998) ................................................................................47

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) .......................................26

*United States v. Washington*, 743 F.3d 938 (4th Cir. 2014).....................................20

*Va. Elec. & Power Co. v. Bransen Energy, Inc*., 850 F.3d 645
     (4th Cir. 2017) ........................................................................ 14-15

Statutes, Regulations, and Rules

28 U.S.C. § 1291 ........................................................................1, 2

28 U.S.C. § 1332 ...........................................................................1

20 U.S.C. 1232g ........................................................................22, 23

34 C.F.R. § 99.31 ......................................................................22, 23

34 C.F.R. § 99.39 ......................................................................22, 23

34 C.F.R. § 106.71 ....................................................................22, 23

Fed. R. App. P. 4 ...........................................................................1

Fed. R. App. P. 28 ........................................................................31

Fed. R. Civ. P. 10 ........................................................................15

Fed. R. Evid. 405 ........................................................................48

E.D.N.C. Civ. R. 7.1(b)(1) ........................................................29

Other Authority

*Merriuam-Webster.com*,
     https://www.merrriam-webster.com/dictionary/ ..........................................48

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

Plaintiff-Appellant John Doe filed a civil action in the United States District Court for the Eastern District of North Carolina asserting state law claims against Defendant-Appellee Lily Chin, whom Mr. Doe named as "Jane Doe." JA1, JA4. The district court had subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* JA6.

On January 5, 2023, the district court denied Mr. Doe's *ex parte* motion for leave to proceed under pseudonym, and ordered that Mr. Doe either (1) file an amended complaint in his real name; or (2) file a notice of dismissal. JA62. Mr. Doe timely filed a notice of appeal from the district court's order on January 15, 2023. JA52; *see* Fed. R. App. P. 4(a)(1)(A). The district court then stayed its order pending the appeal. *See* JA3.

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291 because the district court's order denying Mr. Doe's motion to proceed under pseudonym is an appealable collateral order. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (construing § 1291 to permit appeal of certain collateral orders); *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) (concluding that order denying motion to proceed anonymously was immediately appealable collateral order); *see also Carefirst of Md., Inc. v. Carefirst Urgent Care Ctr., LLC*,

305 F.3d 253, 255 (4th Cir. 2002) (recognizing that when collateral order test is satisfied, jurisdiction arises under § 1291).

## STATEMENT OF THE ISSUE

WHETHER THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION TO DENY MR. DOE'S MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM.

## STATEMENT OF THE CASE

*Sexual assault allegations against John Doe*

In February 2022, Lily Chin, a student at Tulane University, reported to other students that John Doe, then a Tulane senior, had sexually assaulted her. *See* JA14-15. After Ms. Chin told one of Mr. Doe's friends about the assault, Mr. Doe began to hear rumors from multiple students that he had sexually assaulted someone. JA14-15. Ms. Chin confronted Mr. Doe about the assault in a text message, where she said that Mr. Doe was a "repeat offender." JA15. Mr. Doe met with multiple friends about Ms. Chin's allegations, and the president of Mr. Doe's fraternity learned of the allegations. JA15-16. Days after first hearing of Ms. Chin's allegations, and "[d]ue to the mental anguish and heightened anxiety" he was experiencing, Mr. Doe withdrew from Tulane, "as he had already completed enough credits the prior semester to graduate." JA17; *see* JA14-17.

*Tulane University disciplinary process*

After Mr. Doe withdrew from Tulane, he learned that, on February 6, 2022, Ms. Chin and a classmate each had reported to the university that Mr. Doe sexually assaulted them. *See* JA17-18. Tulane investigated the reports through its Title IX office. *See* JA17-31. On May 8, 2022, Tulane found that Mr. Doe was responsible for sexual assault and determined that he should be dismissed from the university. *See* JA5, JA31.

*John Doe's complaint*

On December 8, 2022, Mr. Doe sued Ms. Chin in the United States District Court for the Eastern District of North Carolina, alleging that Ms. Chin's sexual assault allegations were false, and asserting claims for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy. JA32-40. Mr. Doe did not use his real name in his complaint. *See* JA4-42. He identified Ms. Chin as "Jane Doe," and the other classmate he was found to have sexually assaulted as "Sue Roe." JA4. Mr. Doe referred to eighteen potential witnesses by their first and last initials. *See* JA8-11, JA13-16, JA21-25, JA27-30.

Mr. Doe alleged that he was from South Carolina, that he was accepted to Tulane in May 2018, that he enrolled in August 2018, that he studied finance, management, and psychology, and that he intended to attend business school after

graduation.  JA6.  He further alleged that he was "heavily involved in the Tulane

community" and recited a list of his personal accomplishments and activities:

> He was the Co-President of Tulane's section of a national service
> organization for two consecutive years.  He was the treasurer of the
> Food Recovery Network, a club that packages remaining food from
> the dining hall to send to local homeless shelters.  He was one of 34
> Tulane seniors selected by faculty and prior members to join Omicron
> Delta Kappa, an organization founded in 1834 for the purpose of
> making the Tulane community more equitable, inclusive, and
> academically rigorous.  John Doe was also chosen by the Business
> School Associate Dean to be a Tulane Business Summer Minor
> Ambassador, promoting Tulane's summer business program.
> Additionally, John Doe was a member of the business fraternity Alpha
> Kappa Psi, a tutor in the tutoring center, a Merit Scholarship recipient,
> and involved in Tulane's club baseball league and social fraternity
> Zeta Beta Tau (ZBT).  John Doe was on track to graduate *cum laude*.

JA7.

Mr. Doe alleged that he had consensual sexual relationships with Ms. Roe

and later with Ms. Chin.  *See* JA8-12.  He described having a "casual sexual

relationship" with Ms. Roe starting in the fall of 2019.  JA8.  Mr. Doe alleged that

after he learned that Ms. Roe was interested in a "more committed relationship," he

told her he was not interested, and he began seeing other women.  JA8.  After late

2019, Mr. Doe alleged that Ms. Roe made her negative feelings toward him clear.

JA8.  Despite these negative feelings, Mr. Doe alleged that he had a consensual

sexual encounter with Ms. Roe in the spring of 2021, and another encounter with

her in August 2021.  JA8-9.  Mr. Doe alleged that Ms. Roe cried after they had sex

in August 2021, and Ms. Roe's housemate asked Mr. Doe to leave their home.

JA9.  Mr. Doe described this encounter with Ms. Roe as consensual.  JA9.

Mr. Doe alleged that he "matched" with Ms. Chin on Tinder in September

2021, and they met that November.  JA10.  He alleged that he did not see Ms. Chin

again until January 2022, when they kissed after talking at a bar.  JA10.  Mr. Doe

alleged that he invited Ms. Chin to an upcoming fraternity party, that they attended

the party together, where Mr. Doe introduced Ms. Chin to his friends, and that they

had consensual sex.  JA10-12.  He further alleged that he and Ms. Chin had

consensual sex on a second occasion, on February 2, 2022, and that he walked her

home the next morning.  JA12-13.

According to Mr. Doe, Ms. Chin did not immediately report that he had

sexually assaulted her.  *See* JA14.  The next night, on February 3, Mr. Doe had sex

with another woman, A.H.  JA13-14.  Mr. Doe alleged, on information and belief,

that Ms. Chin saw him with A.H. and heard that he and A.H. "went home

together."  JA14.

Mr. Doe contrasted his social life with Ms. Chin's, alleging that Ms. Chin

"transferred from another school during the Covid-19 pandemic and did not have

many friends when she met John Doe."  JA28.  Mr. Doe alleged that Ms. Chin was

"grateful that he introduced her to his friends," but that she "knew that if she and

5

John Doe did not continue to see each other, his friends would likely stop socializing with her." JA29.

Mr. Doe alleged that Ms. Chin first reported that he sexually assaulted her on February 4, when Ms. Chin told Mr. Doe's friend, T.R., about the incident. JA14. Mr. Doe alleged that "[a]fter learning that John Doe had sex with another woman shortly after his sexual encounter with Jane Doe, and realizing that John Doe did not have reciprocal feelings for her, Jane Doe became outraged." JA30. According to Mr. Doe, Ms. Chin was so jealous that "[s]he set out to destroy John Doe's reputation, education, and career." JA30.

Mr. Doe began to hear rumors that he had sexually assaulted another student. JA15-16. On February 8, Mr. Doe received a text message from Ms. Chin, in which she recounted him touching her and masturbating on her without her consent. JA15. Ms. Chin said in the message, "You are a predator and a repeat offender, and will not manipulate or invalidate my assault, like you did to your previous victim." JA15. Although Mr. Doe described his sexual encounter with Sue Roe almost six months earlier as consensual, Mr. Doe acknowledged that he assumed that the "previous victim" Ms. Chin referred to was Sue Roe. JA16.

Ms. Chin and Ms. Roe reported to Tulane that Mr. Doe had sexually assaulted them. JA17-18. Mr. Doe alleged that Ms. Chin "manipulated Tulane's Title IX investigation process to further a malicious vendetta against" him. JA5.

6

Mr. Doe surmised that Ms. Chin and Ms. Roe were driven by jealousy of his other romantic partners and anger over Mr. Doe's "refusal to enter into a committed relationship" with either of them.  JA4, JA8-14, JA28.

Ms. Chin also filed a petition for restraining order against Mr. Doe in Louisiana civil court; Mr. Doe alleged that the matter was dismissed when Ms. Chin did not show up for court.  JA30-31.

Mr. Doe acknowledged that Tulane found that he was responsible for sexual assault and that he should be dismissed from the university.  JA31.  According to Mr. Doe, Ms. Chin made false statements about him sexually assaulting her to Tulane's investigator, other Tulane students, a Louisiana court, and "numerous people who were friends with John Doe."  JA28; *see* JA27.  Mr. Doe alleged that he suffered various damages, including "the loss of his tuition payment, college degree, as well as future career prospects," JA37, emotional distress, reputational harm, and psychological damages, JA38; *see* JA33.

Ms. Chin is the only defendant.  *See* JA1, JA4.  Mr. Doe seeks to recover from Ms. Chin compensatory and punitive damages, attorneys' fees, and costs.  JA40-41.

*John Doe's motion to proceed under pseudonym*

With his complaint, Mr. Doe filed an *ex parte* motion stating, "Plaintiff John Doe moves the Court for leave to proceed under pseudonym." SA1. Mr. Doe submitted a proposed order granting his motion and providing "that the parties shall proceed in this action by referring to one another's pseudonym in the manner set out in the Motion." SA4. In the first sentence of his supporting brief, Mr. Doe explained that he was seeking an order "granting permission to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff." JA43. Later in the brief, Mr. Doe said that he was moving "for leave to proceed under the pseudonym 'John Doe' and to identify Defendant 'Jane Doe' and fellow accuser 'Sue Roe' in this action." JA44.

Mr. Doe cited *James*, 6 F.3d at 238, where this Court recognized factors that may be relevant to a pseudonym request: (1) whether the matter is sensitive; (2) whether there is a risk of retaliatory harm; (3) the ages of the parties; (4) whether the action is against a governmental or private party; and (5) the risk of unfairness to the opposing party. *See* JA46. Mr. Doe argued that the facts of the case were sensitive, and that if he had to disclose his name, he could "never be made whole because this sensitive and prejudicial information will be published in the public arena and the damage will have been done." JA47. Mr. Doe further argued that he could be targeted for retaliatory physical or mental harm. JA48.

8

Mr. Doe conceded that the parties were adults. JA48. Mr. Doe asserted in a heading that "the lawsuit is against both government and private parties." JA49 (capitalization omitted). Finally, he argued that there was no risk of unfairness to Ms. Chin if Mr. Doe remained anonymous. JA49.

In the conclusion of his brief, Mr. Doe asserted that "[t]he Court should allow John Doe, Jane Doe, and Sue Roe to proceed anonymously because of the highly sensitive and private nature of the issues before the Court, and the lack of prejudice to Defendant Jane Doe." JA50. Mr. Doe concluded by repeating the relief he requested through his motion: "Therefore, John Doe requests that he be allowed to proceed pseudonymously for the duration of this litigation." JA50.

Ms. Chin, having not yet been given notice of the lawsuit, did not respond to Mr. Doe's motion. *See* JA1-3.[1]

*Order denying motion to proceed under pseudonym*

On January 5, 2023, the district court, United States District Judge James C. Dever III presiding, denied Mr. Doe's motion to proceed under pseudonym. JA2; *see* JA55-62.

The court recognized that a civil complaint generally must contain the names of all parties, but that, in exceptional circumstances, the court could allow the use

---

[1] Mr. Doe sent Ms. Chin a notice of lawsuit and request to waive service of summons on January 26, 2023, and Ms. Chin waived service on February 24. *See* Waiver, *Doe v. Doe*, No. 5:22-cv-00500-D-BM (E.D.N.C. Mar. 3, 2023).

of a pseudonym. JA56. The court recited the factors from *James* and noted its

"'independent obligation to ensure that extraordinary circumstances support such a

request [to proceed by pseudonym] by balancing the party's stated interest in

anonymity against the public's interest in openness and any prejudice that

anonymity would pose to the opposing party.'" JA56-57 (quoting *Doe v. Pub.*

*Citizen*, 749 F.3d 246, 274 (4th Cir. 2014)).

As to the first *James* factor, the district court found that the matter was

"sensitive and highly personal." JA57. The court found the second factor

neutral—it recognized that allegations of sexual misconduct can be inflammatory,

but found that Mr. Doe failed to produce evidence of more than a general fear of

retaliation or embarrassment. JA57-58. The court found that the third factor

weighed against Mr. Doe's request because the parties were adults. JA58. On the

fourth factor, the court recognized that courts are more likely to allow a plaintiff

suing the government to use a pseudonym, but the court rejected Mr. Doe's

argument that his lawsuit was, in part, against the government. *See* JA59. The

court found that the fourth factor weighed "significantly against" Mr. Doe's

request, because it would be "fundamentally unfair for plaintiff to be able to 'clear

his name' and wield a potential judgment against Jane Doe to his advantage but

hide under a shield of anonymity if unsuccessful." JA59. The court found that the

fifth factor also weighed against Mr. Doe's request, because the "pervasive

anonymity" throughout the complaint "could lead to difficulty and confusion for Jane Doe during discovery."  JA60.

Weighing Mr. Doe's interest against the public interest, the court found no extraordinary circumstances to support Mr. Doe's motion.  JA60.  The district court concluded that the cases Mr. Doe cited in his brief did not support his argument that "courts 'have held under similar circumstances that a party may proceeding anonymously.'"  JA61 (quoting Mr. Doe's district court brief).  The district court noted that Mr. Doe "failed to cite a case in which a plaintiff in a defamation or libel action was allowed to proceed pseudonymously against an alleged victim of sexual assault."  JA61.  Further, although the district court acknowledged instances where a plaintiff was permitted to proceed pseudonymously in litigation attacking the findings of a university Title IX investigation, the court distinguished Mr. Doe's case because Mr. Doe was "not challenging his expulsion from Tulane" or arguing that Tulane violated his rights during the Title IX investigation, and had not named Tulane as a defendant.  JA61.

Weighing all these factors, the district court denied Mr. Doe's motion.  JA61.  The court ordered Mr. Doe to file a complaint using his real name, or alternatively, to file a notice of dismissal.  JA61-62.  The court expressed no opinion about whether, if Mr. Doe filed an amended complaint, he should use a

11

pseudonym for Ms. Chin, because the court found that "plaintiff's motion asked only to permit him to proceed pseudonymously." JA62.

*John Doe's appeal*

On January 15, 2023, Mr. Doe filed a notice of appeal from the district court's order denying his motion to proceed under pseudonym. JA52.

## SUMMARY OF THE ARGUMENT

Mr. Doe contends that he brought this case to "clear his name" after two different women accused him of sexual assault, and after his university found that he was responsible for the assaults and should be expelled. *See* JA44. Despite claiming that he wants to clear his name, Mr. Doe seeks to hide his name from public view by litigating this case behind the shield of a pseudonym.

The district court properly concluded that Mr. Doe was not entitled to the rare dispensation of being allowed to litigate under a pseudonym. Mr. Doe cannot show that the district court abused its discretion in considering the relevant factors and weighing Mr. Doe's asserted privacy interest against the public's interest in access to court proceedings, including the public's interest in the identities of litigants.

Mr. Doe fails in his efforts to liken his case to the cases where district courts have allowed students accused of sexual misconduct to proceed by pseudonym. Unlike the plaintiffs in all those cases, Mr. Doe did not sue his university, and he is

not challenging the result of the university disciplinary proceeding. He does not
seek to expunge his disciplinary record through this litigation. Mr. Doe, again
unlike the plaintiffs in the cases he cites, sued an individual who accused him of
sexual assault, alleging defamation and other claims. Mr. Doe, unlike those other
plaintiffs, seeks money damages for injuries of a public nature—Ms. Chin's
publication of allegedly false statements about Mr. Doe's sexual misconduct to
Tulane students, investigators, and others, causing damage to Mr. Doe's reputation.
The district court properly found that the individual facts of this case, including the
claims Mr. Doe is making, the identity of the defendant, the fundamental
unfairness to Ms. Chin if Mr. Doe remains anonymous, and the public interest,
taken together, make pseudonym protection inappropriate.

In addition, Mr. Doe chose to make detailed allegations about his personal
and educational accomplishments and activities in a publicly filed complaint.
While he withheld his own name, Mr. Doe identified by name multiple
organizations to which he belonged, leadership roles he held, and activities in
which he participated, JA7, thus inviting public identification through the
combination of details he provided. Mr. Doe cannot allege these identifying
details about himself to show the public that he has an excellent reputation that was
damaged by purportedly false allegations of sexual assault, and, at the same time,
refuse to disclose to the public his own name.

13

Ms. Chin respectfully requests that this Court affirm the district court's order denying Mr. Doe's motion to proceed under a pseudonym.

## ARGUMENT

THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION TO DENY MR. DOE'S MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM.

*Standard of Review*

This Court "review[s] a district court's pseudonymity decision under an abuse-of-discretion standard." *Pub. Citizen*, 749 F.3d at 273; *accord James*, 6 F.3d at 239. A district court abuses its discretion if it fails or refuses to exercise discretion at all, "deciding instead as if by general rule, or even arbitrarily, as if neither by rule nor discretion." *James*, 6 F.3d at 239. A district court also abuses its discretion if it fails "adequately to take into account judicially recognized factors constraining its exercise." *Id.* "Finally, discretion may be abused by an exercise that is flawed by erroneous factual or legal premises." *Id.*

"When an appellate court reviews a district court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable: A court of appeals would be justified in concluding that a district court had abused its discretion in making a factual finding only if the finding were clearly erroneous." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990) (cited in *James*, 6 F.3d at 239). An error is clear only when this Court has the "definite and firm

14

conviction that the district court was mistaken." *Va. Elec. & Power Co. v. Bransen Energy, Inc.*, 850 F.3d 645, 654 (4th Cir. 2017) (quotation omitted).

*Discussion*

The Federal Rules of Civil Procedure require a plaintiff to "name all the parties" in the title of the complaint. Fed. R. Civ. P. 10(a); *see Pub. Citizen*, 749 F.3d at 273 ("The Federal Rules of Civil Procedure require that the identities of the parties to a case be disclosed."). "This Court has recognized that in exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym." *Pub. Citizen*, 749 F.3d at 273. Allowing use of a pseudonym in litigation is a "rare dispensation." *See James*, 6 F.3d at 238. The burden is on the party seeking to proceed by pseudonym to establish that exceptional circumstances justify use of a pseudonym. *See Pub. Citizen*, 749 F.3d at 275 (concluding that district court erred by allowing plaintiff to proceed by pseudonym because plaintiff "failed to identify any exceptional circumstances that justify the use of a pseudonym"); *see also In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020) ("The moving party bears the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences that would likely befall it if forced to proceed in its own name.").

15

This Court identified in *James* five nonexclusive factors that may be relevant to the consideration of a request to proceed anonymously:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, [5] relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James*, 6 F.3d at 238; *see Pub. Citizen*, 749 F.3d at 273 (describing factors as "nonexclusive").  In addition, because pseudonymous litigation undermines public access to judicial proceedings, "when a party seeks to litigate under a pseudonym, a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party."  *Pub. Citizen*, 749 F.3d at 274.

As shown below, the district court properly considered each of the *James* factors, and balanced Mr. Doe's interests against the public's interest and the prejudice to Ms. Chin, in exercising its discretion to deny Mr. Doe's request to proceed by pseudonym.  Mr. Doe contends that the district court overlooked an "additional consideration" outside the *James* factors—the risk of reputational harm

16

if Mr. Doe is required to use his real name.  Appellant's Br. 16; *see id.* 17, 25-27.[2]

To the contrary, and as further shown below, the district court expressly considered

Mr. Doe's concern about his reputation in the court's assessment of the *James*

factors and the public interest.  *See* JA57, JA60.  Because Mr. Doe failed to

establish "exceptional circumstances" justifying anonymity, the district court

properly exercised its discretion to deny Mr. Doe's request to proceed under a

pseudonym.  *See Pub. Citizen*, 749 F.3d at 273.

    A.    The District Court Exercised Appropriate Discretion in Balancing the *James* Factors.

        1.    Mr. Doe does not challenge the district court's finding that he sought to preserve privacy in a sensitive and highly personal matter, and the district court properly concluded that cases supporting that finding did not otherwise support Mr. Doe's argument.

On the first *James* factor, the district court found that Mr. Doe sought to

"proceed pseudonymously in order to preserve his privacy in a matter that is

sensitive and highly personal."  JA57.  This finding is consistent with Mr. Doe's

argument below, JA46-47, and Mr. Doe does not challenge the district court's

finding on appeal, *see* Appellant's Br. 27-28.

    Instead, Mr. Doe contends that, where the district court relied on cases to

support its analysis of the sensitive and personal nature of this case, the district

---

[2] Ms. Chin cites Mr. Doe's opening brief (Dkt. No. 18) as "Appellant's Br."  All pinpoint citations are to the internal pagination of the brief, not to the CM/ECF pagination.

court erred by concluding that those same cases involved considerations that do not

apply here and that Mr. Doe's reliance on those cases was therefore "wrong." *Id.*

(citing JA61); *see id.* 13. But courts regularly discuss cases that support a party's

arguments to some extent but fall short of supporting the result that the party seeks.

*E.g.*, *Robinson v. Warden, Md. House of Corr.*, 455 F.2d 1172, 1175 (4th Cir.

1972) (noting that "certain principles stated in these cases [cited by petitioner] and

dicta they contain support [petitioner's] argument in part, but they do not establish

that the increased sentence he received violated the guarantee against double

jeopardy"); *Feldstein v. Nash Cmty. Health Servs., Inc.*, 51 F. Supp. 2d 673, 682-

83 (E.D.N.C. 1999) (discussing case that was similar in some respects, and thus

instructive, but not dispositive because it was "distinguishable on a crucial point").

As shown below, the district court was correct to distinguish the cases Mr. Doe

cited—the plaintiffs in those cases sought injunctive relief from the results of a

university disciplinary proceeding, while Mr. Doe seeks compensatory and

punitive damages for defamation and other torts against a defendant he claims

publicly accused him of sexual assault. *See infra* pp. 43-49.

The district court's finding on the first *James* factor does not control the

outcome. *See, e.g.*, *Doe v. Pittsylvania County*, 844 F. Supp. 2d 724, 729, 746

(W.D. Va. 2012) (finding that first *James* factor weighed in favor of anonymity,

but denying request to proceed by pseudonym upon consideration of all relevant

factors).  Because the district court found that other factors, and the public interest,

weighed against Mr. Doe's request to proceed by pseudonym, the district court

properly exercised its discretion to deny the request.  *See infra* pp. 19-51.

> 2.  The district court exercised appropriate discretion in assessing
> whether identification would pose a risk of retaliatory physical
> or mental harm and finding that this factor was neutral.

The district court properly found that the second *James* factor, the risk of

retaliatory physical or mental harm to Mr. Doe or innocent non-parties, was

neutral.  JA57-58.  Mr. Doe argues to this Court that the second *James* factor

weighs in favor of anonymity, *see* Appellant's Br. 28, but he cannot show that the

district court abused in discretion in finding otherwise.  The district court

considered the facts Mr. Doe presented, including his concern that his reputation

would suffer if he was not allowed to proceed by pseudonym.  JA57; *see*

Appellant's Br. 25-27.  As shown below, and contrary to Mr. Doe's argument, the

district court did not rely on erroneous factual or legal premises in its analysis of

the risk of retaliation.  *See* Appellant's Br. 28-33.

> a.  The district court considered Mr. Doe's concerns about
> reputational harm.

Mr. Doe ignores the plain text of the district court's order, JA57, to argue on

appeal that the district court "failed to consider" the risk of reputational harm.  *See*

Appellant's Br. 17, 25.

19

Before the district court, Mr. Doe argued, including in his discussion of the second *James* factor, that he was concerned that accusations of sexual misconduct would damage his reputation, and that living with that reputation would damage his health. JA44, JA48.

The district court addressed this concern and even quoted from Mr. Doe's brief: "Plaintiff claims that 'under the current social climate' accusations of sexual assault can 'tarnish a reputation.'" JA57; *see* JA48. The district court recognized the "inflammatory nature of sexual misconduct," and the harm that can result from accusations of sexual misconduct. *See* JA57. While the district court did not agree with Mr. Doe that the second *James* factor weighed in his favor, the district court considered the reputational concern Mr. Doe articulated. JA57-58; *see* JA48.

This Court has rejected efforts to show an abuse of discretion where the district court or other decisionmaker considered a factor relevant to its analysis but did not then reach the conclusion that one party advocated as to that factor. *See, e.g.*, *United States v. Washington*, 743 F.3d 938, 944 (4th Cir. 2014) (rejecting argument that district court abused discretion by failing to consider advisory guidelines range in presentence report, where record showed that district court considered advisory guidelines range); *Roanoke River Basin Ass'n v. Hudson*, 940 F.2d 58, 65 (4th Cir. 1991) (rejecting argument that agency acted arbitrarily by failing to consider particular factor where record demonstrated that agency did

consider that factor). Likewise, here, where the district court did consider the reputational harm that Mr. Doe alleged would occur, *see* JA57, Mr. Doe cannot show an abuse of discretion.

> b. The university Title IX process and the Title IX anti-retaliation regulation do not support Mr. Doe's request to proceed by pseudonym.

Mr. Doe cannot rely on the Title IX disciplinary process and regulations promulgated under Title IX to show that the district court erred in its assessment of the risk of retaliatory physical or mental harm. *See* Appellant's Br. 15, 28. While Mr. Doe tries to characterize his case as being "center[ed]" on what happened in the Title IX process, *id.* 28, Mr. Doe is not challenging the university disciplinary process in this case—he did not sue Tulane. *See* JA61. Mr. Doe claims that he was injured by statements that Ms. Chin made outside the Title IX process, as well as within the process, and he alleges that he withdrew from Tulane because of Ms. Chin's allegations before he was even aware of a Title IX report. *See* JA14-17.

Mr. Doe's reliance on cases against university defendants is misplaced. *See* Appellant's Br. 29 (citing *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-CV-378, 2022 WL 972629 (W.D. Va. Mar. 30, 2022) [hereinafter *Virginia Tech III*]; *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:19-CV-00249, 2020 WL 1287960 (W.D. Va. Mar. 18, 2020) [hereinafter *Virginia Tech II*]; *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:18-CV-170, 2018 WL 5929647 (W.D. Va.

21

Nov. 13, 2018) [hereinafter *Virginia Tech I*]; *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593 (E.D. Va. 2016)).  In each of those cases, the plaintiff challenged the university disciplinary process and sought injunctive relief to expunge his disciplinary record.  *See infra* pp. 45-46.  Unlike those cases, Mr. Doe's case is not an extension of a confidential university disciplinary proceeding; it is an effort to recover money damages from Ms. Chin for statements she made both outside and within the Title IX process.  *See* JA46.

Mr. Doe argues for the first time on appeal that "[f]ederal law recognizes that participants in Title IX proceedings can become targets of retaliation and, for this reason, requires that the identity of 'any individual who has been reported to be the perpetrator of sex discrimination' be kept confidential."  Appellants' Br. 28 (quoting 34 C.F.R. § 106.71); *see* JA43-51.  But Mr. Doe is more than someone who was *reported* to be the perpetrator of sex discrimination; he was found responsible for sexual assault and dismissed from Tulane.  JA31.

Federal law permits universities to disclose the names of students found responsible for committing a crime of violence or non-forcible sex offense in violation of the university's policies.  *See* 20 U.S.C. § 1232g(b)(6) & 34 C.F.R. §§ 99.31(a)(14)(i), 99.39; *see also DTH Media Corp v. Folt*, 374 N.C. 292, 303, 841 S.E.2d 251, 259 (2020) (recognizing that institution has discretion to disclose foregoing information).  The confidentiality regulation Mr. Doe cites contains an

express exception for disclosures "permitted by the FERPA statute, 20 U.S.C.

1232g, or FERPA regulations, 34 CFR part 99[.]"  34 C.F.R. § 106.71(a).  Because

Mr. Doe was found responsible for sexual assault in violation of university policy,

FERPA and its regulations permit Tulane to disclose his name.  *See* 20 U.S.C.

§ 1232g(b)(6) & 34 C.F.R. §§ 99.31(a)(14)(i), 99.39.  The confidentiality

requirement in 34 C.F.R. § 106.71(a) does not apply.

> c.    The district court did not commit legal or factual error by
> finding that Mr. Doe had not produced evidence of more
> than a general fear of retaliation or embarrassment.

Contrary to Mr. Doe's argument, the district court did not erroneously "read

an evidence requirement into the second *James* factor."  *See* Appellant's Br. 29.

Mr. Doe conflates the district court's consideration of whether there was evidence

of retaliatory harm with the imposition of an "evidence requirement."  *See id.*

District courts weighing the *James* factors and the public interest in access to court

proceedings regularly consider whether the party seeking to proceed by

pseudonym has presented evidence that the party will suffer retaliatory harm—

other than embarrassment—if required to litigate in the party's own name.  *See,*

*e.g.*, *Student A v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 920 (W.D. Va. 2022)

(finding that retaliation factor weighed in favor of pseudonymity where plaintiffs

"provided evidence to support more than a mere 'general fear' of retaliation or

mere embarrassment"); *Richard S. v. Sebelius*, No. CA 3:12-007-TMC, 2012 WL

1909344, at *2 (D.S.C. May 25, 2012) (finding, in denying motion to proceed by pseudonym, that "there is no evidence of any retaliation").  The district court did not err by following the same practice and comparing Mr. Doe's case to cases where the party seeking to proceed by pseudonym presented evidence of retaliatory harm.  *See* JA57-58.

Further, the district court did not err, let alone commit clear error, by finding that Mr. Doe did not produce evidence of more than a general fear of retaliation or embarrassment.  JA57-58; *see* Appellant's Br. 30-31.  In his three-paragraph argument below on the retaliation factor, Mr. Doe relied on the nature of Ms. Chin's accusations, asserting that if his identity was disclosed, he "could be targeted for retaliatory physical or mental harm based solely on the accusation of sexual misconduct," and that living with those accusations "would be detrimental to [Mr.] Doe's physical and mental health."  JA48.  Mr. Doe did not offer any evidence or allegations that he had received threats of retaliation because of his lawsuit; he did not identify any person who might retaliate against him; and he did not specify what kind of "physical or mental harm" he might suffer.  JA48.  Rather, Mr. Doe asserted a risk to his "public reputation."  JA48.  Mr. Doe offered no evidence, and he did not cite any allegations in his complaint, in support of his argument on the risk of retaliation.  *See* JA48.  Therefore, the district court's

24

finding that Mr. Doe failed to produce evidence to support more than a general fear of retaliation or embarrassment was not erroneous.  *See* JA57-58.

On appeal, Mr. Doe argues that the district court "did not consider John Doe's assertion that being falsely branded as a sexual predator would cause him physical and mental harm."  Appellant's Br. 13.  To the contrary, the district court did consider this risk of reputational harm.  *Supra* pp. 19-21.

Mr. Doe also argues that the district court should have relied on his "allegations that, as a result of Jane Doe's false accusations, John Doe has *already* been the target of retaliatory physical and mental harm."  Appellant's Br. 14 (emphasis added); *see id.* 30-31 (citing allegations about harm Mr. Doe has suffered).  To the extent that Mr. Doe contends that the district court was required to peruse his complaint to construct a scenario where Mr. Doe could be exposed to retaliatory harm, *see id.* 13-14, 30-31, he misapprehends the district court's responsibility.  Mr. Doe did not argue to the district court that it should find a risk of retaliation based on the allegations he now cites; in his retaliation argument below, Mr. Doe did not cite his complaint.  *See* JA48.  The district court was not required to search the record to find support for Mr. Doe's argument; that burden rested on Mr. Doe.  *See, e.g.*, *Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*, 33 F.3d 390, 396 (4th Cir. 1994) (concluding that district court "would have remained well within its discretion in refusing to ferret out the facts that counsel

had not bothered to excavate"); *Hill v. Carvana, LLC*, No. 1-22-CV-37, 2022 WL 1625020, at *5 (M.D.N.C. May 23, 2022) ("Courts are neutral arbiters, not advocates, and courts are not required to scour the record for evidence." (citation omitted)); *see also United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (recognizing that parties represented by counsel "are responsible for advancing the facts and argument entitling them to relief" (quotation omitted)).

> d.    The district court did not rule that a party seeking to proceed by pseudonym must establish "aggravating factors."

The district court did not rely on the "erroneous legal premise that 'aggravating factors' are required in order to favor pseudonymity." *See* Appellant's Br. 31 (quoting JA58); *see also id.* 17. Mr. Doe conflates the district court's observation that other cases involved "aggravating factors" with the district court imposing a requirement that Mr. Doe demonstrate "aggravating factors." *See id.* 31-32. In analyzing Mr. Doe's argument on the risk of retaliation, the district court explained that "there do not appear to be any aggravating factors beyond the subject matter of the sexual assault allegation," contrasting the case with two others Mr. Doe cited where there was evidence of significant media attention. JA58 (citing *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016), and *George Mason*, 179 F. Supp. 3d at 593). By taking the care to analyze and distinguish the cases

Mr. Doe cited, the district court did not suggest that a party could only show a risk of retaliation if the party demonstrated "aggravating factors."  *See* JA58.

> e.    The district court did not abuse its discretion by determining that the alleged risk of harm to others did not support Mr. Doe's request to proceed by pseudonym.

Finally, the district court did not rely on an erroneous legal premise by determining, in its analysis of the second *James* factor, that Mr. Doe's reference to potential harm to Ms. Chin and Sue Roe did not support his request to proceed by pseudonym.  *See* Appellant's Br. 32-33 (citing JA58).  The district court recognized Mr. Doe's asserted concern that "it would be harmful to publicize the names of the female accusers as it would subject them to unwanted scrutiny, harassment and ridicule."  JA48 (quotation omitted); *see* JA57.  The district court properly determined that harm resulting from publicizing Ms. Chin's and Sue Roe's names did not affect its decision on Mr. Doe's request to proceed by pseudonym.  *See* JA58.

While harm to others may, in some circumstances, support the requesting party's desire to use of a pseudonym, *see* Appellant's Br. 32, Mr. Doe did not attempt to tie the alleged harm to Ms. Chin and Sue Roe to his request to use a pseudonym, *see* JA48.  Rather, he argued below that it would be harmful to publicize Ms. Chin's and Sue Roe's names; he did not argue that publicizing his own name would risk harm to Ms. Chin or Sue Roe.  *See* JA48.

27

Mr. Doe's argument that he "moved for pseudonym protection for himself, Jane Doe and Sue Roe," Appellant's Br. 32, is inconsistent with the motion he presented to the district court, *see* SA1. Mr. Doe said in his motion only that "Plaintiff John Doe moves the Court for leave to proceed under pseudonym," and that he would file a supporting brief. SA1. In a proposed order attached to the motion, Mr. Doe invited the court to order "that the parties shall proceed in this action by referring to one another's pseudonym in the manner set out in the Motion," SA4; in the motion, Mr. Doe "set out" a pseudonym only for himself, SA1. Mr. Doe confirmed in the first sentence of his supporting brief that he was "seek[ing] an Order granting permission to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff." JA43. Mr. Doe cites the concluding paragraph of his district court brief, *see* Appellant's Br. 32-33 (citing JA50), where he wrote that the district court "should allow John Doe, Jane Doe, and Sue Roe to proceed anonymously," JA50. However, in the next sentence, he reiterated a request for relief consistent with what he requested in his motion: "Therefore, John Doe requests that he be allowed to proceed pseudonymously for the duration of this litigation." JA50.

The district court properly relied on Mr. Doe's motion to find that Mr. Doe "asked only to permit him to proceed pseudonymously," and not Ms. Chin or anyone else. JA62 (citing district court docket entry 5, Mr. Doe's motion for leave

28

to proceed under pseudonym).  Under the district court's local rules, Mr. Doe, as

the movant, was required to state "precisely the relief requested" in his motion.

*See* E.D.N.C. Civ. R. 7.1(b)(1) ("All motions shall be concise and shall state

precisely the relief requested."); *see also Infernal Tech., LLC v. Epic Games, Inc.*,

339 F.R.D. 226, 229 n.2 (E.D.N.C. 2021) (noting that to receive relief, "[u]nder the

court's Local Civil Rules, [movant] would have had to explicitly ask for this relief

in its motion").  Absent a motion with a specific request that Ms. Chin or others be

prohibited from using their own names or required to use pseudonyms, and a

memorandum supporting that request, the district court correctly found that Mr.

Doe did not seek relief other than to proceed by pseudonym himself.  JA61-62;

*see, e.g.*, *Bryant v. Core Contents Restoration, LLC*, No. 7:20-CV-00040-M, 2021

WL 1207719, at *9 n.9 (E.D.N.C. Mar. 30, 2021) (citing local rules including Rule

7.1(b)(1) and declining to relief not specifically raised by motion); *Mondragon v.*

*Scott Farms, Inc.*, No. 5:17-CV-00356-FL, 2019 WL 489117, at *12 (E.D.N.C.

Feb. 7, 2019) (same).[3]

---

[3] Mr. Doe's motion to stay pending appeal confirms that the relief he sought below
was to withhold his own name.  Mr. Doe sought and obtained a stay of the portion
of the district court's order "requiring Plaintiff to file an amended complaint under
his legal name."  JA3; *see* Order, *Doe*, No. 5:22-cv-00500-D-BM (E.D.N.C. Jan.
24, 2023).  Mr. Doe did not purport to seek a stay of any other part of the order.
JA2-3 (motion to "stay the court's order [ECF No. 8] requiring Plaintiff to file an
amended complaint under his legal name" (italics omitted)); *see* Mot. to Stay, *Doe*,
No. 5:22-cv-00500-D-BM (E.D.N.C. Jan. 19, 2023).

Allowing Mr. Doe to proceed under a pseudonym will not protect Ms. Chin or Sue Roe, and Mr. Doe is not seeking to protect them. *See* Appellant's Br. 32-33. To the contrary, as the litigation of this case will reveal, Mr. Doe sexually assaulted Ms. Chin, and, when she was brave enough to truthfully report the assault and cooperate in the university's Title IX process, Mr. Doe retaliated by suing her. Ms. Chin rejects the accusation in Mr. Doe's brief that her "voluntary self-identification for purposes of this appeal seems to be a continuation of her vengeful campaign to destroy John Doe's reputation" or an effort to "out John Doe through the public disclosure of *her* identity." *See id.* 33 n.3 (emphasis added). Neither Mr. Doe nor Ms. Chin has sought or obtained permission from the district court for Ms. Chin to identify herself by a pseudonym. *See supra* pp. 28-29. Before Ms. Chin's counsel entered an appearance in this appeal (Dkt. No. 13, 15), Mr. Doe appealed the denial of *his* motion to proceed under a pseudonym, JA52, acknowledged that the district court did not decide whether Ms. Chin could proceed by pseudonym (Dkt. No. 5 at 2), and described the issue on appeal as, "Did the District Court err in denying Plaintiff-Appellant John Doe's motion to proceed by pseudonym in the underlying action?" (*id.* at 3). Ms. Chin therefore identified herself by name on the appearance and disclosure forms that call for the name of the party filing them. (*See* Dkt. Nos. 13, 14, 15).[4]

---

[4] Ms. Chin followed the same practice in her district court filings.

3.      Mr. Doe does not challenge the district court's finding that the age of the parties weighed against anonymity.

The district court properly determined that the third *James* factor, the age of the parties, weighed against anonymity where Mr. Doe conceded that all parties are adults.  JA58.  Mr. Doe argued below that this factor did not weigh against anonymity because the parties were college students at the time of the events alleged in the complaint.  *See* JA48.  The district court rejected this argument, finding that "when plaintiff filed this complaint, plaintiff was beyond the typical age of a college student and would have already graduated from Tulane if not for his expulsion."  JA58.

Mr. Doe does not argue in his brief to this Court that the district court erred by determining that the third *James* factor weighed against anonymity.  *See* Appellant's Br. *passim*.  Therefore, Mr. Doe abandoned any challenge to the district court's finding that the third factor weighed against Mr. Doe's request to proceed under a pseudonym.  *See United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned."); *see also* Fed. R. App. P. 28(a), (a)(8)(A) (requiring opening brief to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

31

      4.     The district court correctly rejected Mr. Doe's assertion that his case was against both the government and a private party and exercised appropriate discretion to find that the fourth *James* factor weighed against anonymity.

Recognizing that courts are more inclined to allow pseudonym protection to a plaintiff suing the government, the district court properly determined that the fourth *James* factor weighed significantly against anonymity where Mr. Doe sought money damages from a private individual. JA58-59. The district court rejected Mr. Doe's argument below that his case was against both the government and a private party. JA59; *see* JA49. Mr. Doe offered no basis for this argument in the district court, JA49, and he does not argue on appeal that the district court was wrong to reject it, *see* Appellant's Br. *passim*.

Mr. Doe also does not appear to challenge on appeal the district court's determination that this factor weighed *against* allowing him to proceed by pseudonym. *See id.* 33-36. Rather, Mr. Doe argues that the district court erred by giving the fourth *James* factor significant weight, and that this alleged error shows that the district court denied Mr. Doe's motion because of "general disapproval of party anonymity in cases where private parties are involved, rather than consideration of relevant case law and the specific circumstances of John Doe's case." *Id.* 36. The district court's careful and thorough discussion of Mr. Doe's case in comparison to other cases belies Mr. Doe's argument. *See* JA55-62.

32

Courts are less likely to allow pseudonymous litigation "'when the plaintiff sues a private individual than when the action is against a governmental entity seeking to have a law or regulation declared invalid.'" *Pittsylvania County*, 844 F. Supp. 2d at 730 (quoting *Doe v. Merten*, 219 F.R.D. 387, 394 (E.D. Va. 2004)). As the district court explained in *Pittsylvania County*, the fourth *James* factor may weigh against anonymity when the defendant is a private party because "[a]ctions against the government do no harm to its reputation, whereas suits filed against private parties may damage their good names and result in economic harm." *Id.* The district court properly considered *Pittsylvania County* and other cases to determine that, because Mr. Doe only sued a private individual for money damages, the fourth *James* factor weighed against anonymity. JA59 (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979); *Pittsylvania County*, 844 F. Supp. 2d at 730; *Virginia Tech III*, 2022 WL 972629, at *3; *A.B.C. v. XYZ Corp.*, 660 A.2d 1199 (N.J. Super. Ct. App. Div. 1995)). The district court correctly determined that, on the facts of this case, where Mr. Doe sues only a private individual and seeks money damages for her alleged wrongdoing, it would be "'fundamentally unfair' for plaintiff to be able to 'clear his name' and wield a potential judgment against Jane Doe to his advantage but hide under the shield of anonymity if unsuccessful." JA59.

In finding that allowing Mr. Doe to proceed by pseudonym would be unfair, JA59, the district court did not "overlook[ ] that John Doe sought pseudonym protection for Jane Doe for the duration of the litigation," Appellant's Br. 15; *see id.* 35. Mr. Doe did not move for leave for Ms. Chin to proceed under a pseudonym. *See supra* pp. 28-29. Even if he had, allowing Ms. Chin to proceed by pseudonym would not diminish the district court's concern about unfairness. If both parties were identified by pseudonyms, and Mr. Doe won a judgment, he could wield the judgment to his advantage by forcing Ms. Chin to pay him money; if he lost the case, he could "hide under the shield of anonymity," and not face the risk that the public would view the outcome in Ms. Chin's favor as validation of her sexual assault allegations. *See* JA59. Mr. Doe cannot identify any error in the district court's finding of fundamental unfairness to Ms. Chin, *see* Appellant's Br. 34-35, and that finding supports the district court's decision to assign significant weight to the fourth *James* factor, *see* JA59.

Mr. Doe criticizes the district court's citation to *Pittsylvania County*, *Southern Methodist*, and *A.B.C.* because those cases did not involve sexual assault allegations. *See* Appellant's Br. 34-35.[5] But the district court cited all three cases in its analysis of the fourth *James* factor—whether the case was brought against the

---

[5] Although *A.B.C.* did not involve a university sexual misconduct incident, it did involve a sex crime—the plaintiff alleged that he was fired after he committed the crime of indecent exposure while he was supposed to be attending a business seminar. 660 A.2d at 1200.

government or a private party. JA59. The fourth *James* factor does not address the subject matter of the case; it concerns the identity of the defendant. *See James*, 6 F.3d at 238. The district court cited *Pittsylvania County*, *Southern Methodist*, and *A.B.C.* only after the district court found, on the first *James* factor, that with respect to the subject matter of the case, Mr. Doe was seeking to protect sensitive and personal matters. *See* JA57.

The *Virginia Tech* cases do not support Mr. Doe's argument that the district court erroneously relied on a general prohibition of anonymity in cases against private defendants to deny Mr. Doe's request to proceed by pseudonym. *See* Appellant's Br. 21-22, 33-34. In the *Virginia Tech* cases, the courts allowed plaintiffs challenging their public university's disciplinary process and seeking to expunge their disciplinary records, in litigation against the university and its employees, to proceed by pseudonym, even though the fourth *James* factor did not weigh in favor of the respective plaintiffs' requests. 2022 WL 972629, at *1, *4; 2020 WL 1287960, at *1-2, *5; 2018 WL 5929647, at *1, *4. The *Virginia Tech* courts considered other factors that supported the plaintiffs' requests to proceed by pseudonym. *See* 2022 WL 972629, at *2-4; 2020 WL 1287960, at *3-5; 2018 WL 5929647, at *3-4. In each of those cases, the district court found that at least three other *James* factors supported the pseudonymity request, and that the plaintiffs' privacy interests outweighed the public interest. *See* 2022 WL 972629, at *2-4

35

(finding that fourth factor was neutral where plaintiff sued public university and individuals in their official capacities, but first, second, and fifth *James* factors weighed in favor of anonymity); 2020 WL 1287960, at *3-5 (finding that fourth factor weighed against anonymity because defendants included government and private parties, but all other factors weighed in favor of anonymity); 2018 WL 5929647, at *3-4 (finding that fourth factor weighed against anonymity because defendants included government and private parties, but first, second, and fifth *James* factors weighed in favor of anonymity).

Like each of the *Virginia Tech* courts, *supra* pp. 35-36, the district court in this case considered all the *James* factors and the public interest; the district court did not decide the motion on the basis of the fourth *James* factor alone.  *See* JA57-60.  After considering other factors, the district court found that only the first *James* factor favored anonymity, *see* JA57-60, and that Mr. Doe failed to overcome the public interest in openness, JA60-61.  For the reasons demonstrated above and below with respect to each factor, the district court correctly decided that the balance of those factors weighed against anonymity.  JA61.

The district court's decision to have the parties use initials in *B.R. v. F.C.S.B.*, No. 1:19-CV-00917-RDA-TCB, 2020 WL 12435689, at *26 (E.D. Va. Mar. 10, 2020), *aff'd on other grounds*, 17 F.4th 485 (4th Cir. 2021), likewise fails to support Mr. Doe's argument.  *See* Appellant's Br. 36 (citing *B.R.*, 2020 WL

36

12435689, at *26).  In that case, the court found that the fourth *James* factor

weighed against the use of a pseudonym because the majority of the defendants

were private parties.  *B.R.*, 2020 WL 12435689, at *26.  However, the court found

it appropriate to allow the use of initials for both the plaintiff and the defendants

because the claims were so "*highly* sensitive and of an *immensely* personal nature,"

where the plaintiff alleged that, as a twelve-year-old middle school student, she

was "repeatedly 'raped, tortured, extorted and sexually assaulted'" by her

classmates, two of whom she named as defendants.  *Id.* at *25 (emphasis in *B.R.*).

While Mr. Doe asserts that he faces the "same wide-ranging ramifications" at issue

in *B.R.*, Appellant's Br. 25, Mr. Doe offers no basis for this Court to analogize his

case to litigation over the repeated rape and torture of a child.

> 5.  The district court correctly found that there was a risk of
>     prejudice to Ms. Chin and exercised appropriate discretion to
>     find that this factor weighed against anonymity.

On the final *James* factor, the district court found that, although Ms. Chin

was aware of Mr. Doe's identity, allowing Mr. Doe to litigate under a pseudonym

created a risk of prejudice to Ms. Chin, including "difficulty and confusion" during

the discovery process.  JA59-60.  The district court properly exercised its

discretion to determine that this factor weighed against allowing Mr. Doe to

proceed pseudonymously.  JA60.

Mr. Doe cannot show that the district court relied on the "erroneous factual premise that 'pervasive anonymity' in the Complaint could lead to difficulty and confusion for Jane Doe during discovery.'" *See* Appellant's Br. 36-37. Mr. Doe's complaint supports a finding of "pervasive anonymity"—Mr. Doe referred to himself, Ms. Chin, and the other student Mr. Doe was found to have sexually assaulted by pseudonyms, and he identified at least eighteen other people by their initials. *See* JA8-11, JA13-16, JA21-25, JA27-30.

Mr. Doe's argument that he "did not represent to the District Court that he was unwilling to conduct discovery using the real names of Sue Roe and other persons identified in the Complaint" is unavailing. *See* Appellant's Br. 37. Mr. Doe argues for the first time on appeal that anonymity issues in discovery "could easily be dealt with through a protective order" and that his allegations in the complaint show that all individuals identified by their initials are personally known to Ms. Chin. *See id.* Mr. Doe had the burden to support his request to proceed under a pseudonym, *see Sealed Case*, 971 F.3d at 326, and he offered no argument about how the district court could manage discovery to avoid prejudice to Ms. Chin's defense, *see* JA49. Instead, Mr. Doe argued only that there would be no prejudice to Ms. Chin because she was aware of Mr. Doe's identity, and that this factor thus weighed "against revealing John Doe's identity to the public." JA49.

As the district court correctly recognized, anonymity can create prejudice even when the defendant knows the identity of the plaintiff.  *See* JA59-60; *see also Doe v. Trs. of Ind. Univ.*, 577 F. Supp. 3d 896, 907 (S.D. Ind. 2022) [hereinafter *Indiana University*] (rejecting plaintiff's argument that because defendants were aware of plaintiff's identity, defendants would not be prejudiced by plaintiff's use of pseudonym).  Because Mr. Doe did not give Ms. Chin notice of his complaint and pseudonym motion until three weeks after the district court denied the motion, *supra* p. 9, Ms. Chin had no opportunity to offer evidence of the extent of the prejudice she would suffer in the case preparation and discovery process, for example, in trying to investigate the case, interview witnesses, and take discovery from non-parties—whom Ms. Chin cannot assume will agree to be bound by a protective order—without revealing Mr. Doe's identity.  *See Indiana University*, 577 F. Supp. 3d at 907 (recognizing as valid defendants' concerns about taking third-party discovery if plaintiff was anonymous).

Allowing Mr. Doe to proceed by pseudonym also would prejudice Ms. Chin at trial.  Courts have recognized that, when a party claiming that injury through public revelation of information is allowed to use a pseudonym at trial, jurors may be led to believe that the use of the pseudonym validates that the plaintiff did indeed suffer the claimed harm.  *See id.*; *Doe v. Rose*, No. CV-15-07503-MWF-JCX, 2016 WL 9150620, at *3 (C.D. Cal. Sept. 22, 2016) ("Many courts have

expressed the concern that allowing a plaintiff to proceed under a pseudonym at trial would communicate a subliminal comment on the harm the alleged encounter with the defendant has caused the plaintiff." (quotation omitted)).  Permitting Mr. Doe to use a pseudonym to protect his reputation when he is seeking reputational damages, JA40-41, JA44, would suggest to the jury that the district court agrees with Mr. Doe's allegations of reputational harm.  In addition, allowing Mr. Doe to proceed under a fictitious name at trial will hamper the jury's truth-seeking function by dampening the impact of cross-examination.  *See Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015) ("A witness who proceeds under her own name and is subject to potentially rigorous cross-examination may feel more inhibited than a pseudonymous witness from fabricating or embellishing an account."), *aff'd*, 672 F. App'x 48 (2d Cir. 2016) (summary order).

This case is unlike *James*, where the Court considered the risk of prejudice attendant to use of a pseudonym at trial but recognized concessions that the plaintiffs made to avoid prejudice to the defendant.  6 F.3d at 241-42.  In *James*, the plaintiff spouses sued a physician who artificially inseminated one of the spouses with his own sperm without her consent.  *Id.* at 235, 241.  The plaintiffs sought leave to use pseudonyms at trial, based in part on a proffer of expert evidence showing that it would be harmful to the plaintiffs' pre-adolescent children to learn at their young age that the defendant was their biological parent.  *Id.* at

40

241.  The district court denied the motion; on appeal, this Court concluded that the district court improperly applied a general rule that "party-anonymity at trial is simply not permissible," and remanded for the district court to make a particularized assessment of the facts.  *Id.* at 239, 242-43.  This Court recognized that the *James* plaintiffs made a key concession to avoid prejudice to the defendant from their use of pseudonyms—the plaintiffs stipulated that "they would not claim as items of damage any emotional distress caused them either by shame from public revelation of their victimization or by their awareness of the hurt experienced by the children."  *Id.* at 241.  The *James* Court noted that if the district court had not applied a general rule, but had instead balanced the individual factors, the district court could properly have concluded that this limitation on the plaintiffs' claims and damages, coupled with other measures, could avoid prejudice to the defendant from the plaintiffs' use of pseudonyms.  *Id.* at 242.

Mr. Doe, in contrast to the plaintiffs in *James*, is seeking to recover for emotional distress and reputational harm that he claims he suffered because of Ms. Chin's public revelation that Mr. Doe sexually assaulted her.  *See* JA5, JA32-34, JA37-38.  Allowing Mr. Doe to litigate this case under a pseudonym would suggest that his allegations of emotional distress and reputational harm are true and would thus prejudice Ms. Chin in her defense of this case.  *See Doe v. Cabrera*, 307 F.R.D. 1, 10 (D.D.C. 2014).

41

Contrary to Mr. Doe's argument, Ms. Chin is not "attempting to align this case with those cases in which the accused seek to proceed by pseudonym against the named accused." *See* Appellant's Br. 41. Although Mr. Doe did not move for leave to require Ms. Chin to proceed under a pseudonym, *supra* pp. 28-29, Mr. Doe did not use Ms. Chin's name in his complaint, JA4-42. As shown above, Ms. Chin would be prejudiced in the defense of her case, including in the investigation, discovery, and trial processes, by Mr. Doe's use of a pseudonym. *Supra* pp. 39-41. Even if Ms. Chin were identified by a pseudonym, she would still face prejudice in attempting to interview witnesses and take discovery from non-parties without being permitted to use *Mr. Doe's* name. *Supra* p. 39. It is Mr. Doe, not Ms. Chin, who claims reputational damages; allowing Mr. Doe to use a pseudonym at trial, regardless of how Ms. Chin was identified at trial, would suggest to the jury that Mr. Doe's allegations of reputational harm are valid. *Supra* pp. 39-41.

> B.   The District Court Properly Balanced Mr. Doe's Stated Interest in Anonymity Against the Public's Interest in Opennesss.

As required by this Court's precedent, the district court also balanced Mr. Doe's interest in proceeding by pseudonym against the public interest in open proceedings. JA60-61; *see Pub. Citizen*, 749 F.3d at 274; *accord B.R.*, 17 F.4th at 496. As shown below, the record contradicts Mr. Doe's assertion that "[t]he District Court failed to balance John Doe's interest in anonymity against the public's interest in open judicial proceedings." *See* Appellant's Br. 39. The

42

district court properly balanced Mr. Doe's interest against the public interest and found that Mr. Doe failed to establish the extraordinary circumstances necessary to warrant anonymity.  *See* JA60 (citing *Pub. Citizen*, 749 F.3d at 274).

> 1. The district court correctly determined that the extraordinary circumstances warranting anonymity in cases against universities do not apply to Mr. Doe's defamation case against an individual.

Mr. Doe concedes, as he must, that the district court was correct to find that Mr. Doe cited no case in which a plaintiff in a defamation lawsuit was allowed to proceed pseudonymously against an alleged victim of sexual assault.  Appellant's Br. 40; *see* JA61.  Multiple courts have recognized the lack of authority for pseudonymity in defamation cases.  *See, e.g.*, *Roe v. Does 1-11*, No. 20-cv-3788-MKB-SJB, 2020 WL 6152174, at *6 (E.D.N.Y. Oct. 14, 2020) ("The Court finds it highly persuasive that Plaintiff fails to and is unable to cite a single case in which a plaintiff, suing for defamation and alleging he was falsely accused of sexual assault, was allowed to proceed anonymously against the victim of the purported assault."); *Doe v. Moreland*, No. CV 18-800 (TJK), 2019 WL 2336435, at *2 (D.D.C. Feb. 21, 2019) ("Certainly, neither party has directed the Court to any case in this Circuit in which a plaintiff asserting a defamation or false light claim has been permitted to pursue such a claim while using a pseudonym."); *see also A.B. v. C.D.*, No. 2:17-CV-5840-DRH-AYS, 2018 WL 1935999, at *3 (E.D.N.Y. Apr. 24,

2018)[6] (denying plaintiff's request to proceed by pseudonym, but allowing

defendant to proceed by pseudonym, where plaintiff alleged defamation claim

arising from defendant's report of sexual misconduct).  This lack of authority

makes sense.  A defamation case against a private individual is unlike a tort,

contract, or constitutional claim against an institution challenging the institution's

administration of its disciplinary process, the outcome of that process, or the

attendant sanction.  *See* JA61.  Comparing Mr. Doe's case to the *Virginia Tech*,

*George Mason*, and *Alger* cases illustrates why this distinction matters to the

outcome of Mr. Doe's pseudonym motion.

    Unlike Mr. Doe, the *Virginia Tech*, *George Mason*, and *Alger* plaintiffs each

sued their public university and its employees; those plaintiffs did not sue the

individuals who accused them of sexual assault.  *Virginia Tech III*, 2022 WL

972629, at *1, *3; *Virginia Tech II*, 2020 WL 1287960, at *1-2; *Virginia Tech I*,

2018 WL 5929647, at *1; *George Mason*, 179 F. Supp. 3d at 585, 587-88; *Alger*,

317 F.R.D. at 38.  Unlike Mr. Doe, the *Virginia Tech*, *George Mason*, and *Alger*

plaintiffs did not plead defamation claims.  *Virginia Tech III*, 2022 WL 972629, at

*1; *Virginia Tech II*, 2020 WL 1287960, at *1-2; *Virginia Tech I*, 2018 WL

5929647, at *1; *George Mason*, 179 F. Supp. 3d at 587-88; *Alger*, 317 F.R.D. at

---

[6] The opinion in *Menaker v. C.D.*, No. 2:17-CV-5840-DRH-AYS, 2018 WL
5776533, at *1 (E.D.N.Y. Nov. 1, 2018), provides the relevant factual background
for the denial of the pseudonym motion in *A.B.*, 2018 WL 1935999, at *3.

38. And unlike Mr. Doe, each of the *Virginia Tech*, *George Mason*, and *Alger* plaintiffs sought injunctive relief to expunge their respective disciplinary records. *Virginia Tech III*, 2022 WL 972629, at *4; *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:19-CV-00249, 2020 WL 1309461, at *4 (W.D. Va. Mar. 19, 2020) (opinion entered in *Virginia Tech II*); *Doe v. Va. Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 488 (W.D. Va. 2019) (recognizing that plaintiffs, including plaintiff in *Virginia Tech I*, were "seeking to expunge and clear their academic records"); *George Mason*, 179 F. Supp. 3d at 587-88; *Alger*, 317 F.R.D. at 38.

Therefore, the circumstances of Mr. Doe's case do not, as he contends, "track" the circumstances in the *Virginia Tech* cases, *see* Appellant's Br. 23, nor is Mr. Doe "strikingly similar to the plaintiff in" *George Mason*, *id.* 25. The distinctions between Mr. Doe's case and the *Virginia Tech*, *George Mason*, and *Alger* cases warrant a different result on pseudonymity for two related reasons. First, when a student challenges the university's administration of its confidential disciplinary process, a lawsuit may serve as a final "appeal" of the university's actions. As the court in *George Mason* observed, "[i]t makes little sense" to breach the confidentiality that would otherwise cover a university's Title IX proceedings "because *the university* erred and left the accused with no redress other than a resort to federal litigation." 179 F. Supp. 3d at 593 (emphasis in *George Mason*). Second, when a student found responsible for a disciplinary

45

violation sues the university and/or its officials for injunctive relief to expunge the student's disciplinary record, disclosure of the student's identity would "greatly undermine any relief to which he may be entitled." *Virginia Tech III*, 2022 WL 972629, at *4. Refusing to allow a student to proceed anonymously in such a case would prevent the student from being made whole even if the court ordered expungement, because "the cat would have already been let out of the bag." *See Alger*, 317 F.R.D. at 42.

These considerations do not apply here. While Mr. Doe contends that if he is "forced to proceed under his real name, he will suffer the very harm that he is trying to prevent through his lawsuit," Appellant's Br. 17, Mr. Doe is only seeking damages, not injunctive relief that would or could prohibit others from learning about Ms. Chin's sexual assault allegations, JA40-41. The district court recognized that, unlike in the cases Mr. Doe cited, Mr. Doe "is not challenging his expulsion from Tulane or arguing that Tulane violated Title IX or due process during the sexual assault investigation. In fact, Tulane is not a defendant." JA61. Mr. Doe seeks no relief from Tulane, JA61; instead, he seeks money damages from a private individual who has no authority over Tulane's disciplinary process. Cases where students have sought to expunge their disciplinary records by suing their universities—not the individuals who accused them of sexual assault—do not support Mr. Doe's request to remain anonymous in this defamation case. *See Roe*,

46

2020 WL 6152174, at *5 n.3 (noting that cases "brought against colleges and universities, not victims of assault" can "provide little guidance" when plaintiff seeks anonymity in defamation case). The district court correctly recognized that Mr. Doe was "wrong" to argue that courts have allowed plaintiffs under similar circumstances to proceed anonymously. JA61.

Mr. Doe's request to proceed by pseudonym is inconsistent with the relief he seeks in this case: "compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, *damages to reputation*, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects." *See* JA40 (emphasis added). Public perception is inherent in the concept of reputation—reputation is a person's "place in public esteem or regard," or her "good name." *See Reputation*, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/reputation (last visited Mar. 28, 2023). Proving reputational damages, which Mr. Doe repeatedly seeks in his complaint, JA5, JA34-35, JA37-40, will thus invite inquiry into Mr. Doe's character and conduct, how others perceived him before Ms. Chin reported the sexual assault, and how others perceive him now. *See, e.g.*, *United States v. Atkins*, No. 97-4807, 1998 WL 153397, at *2 (4th Cir. Apr. 3, 1998) (per curiam) (recognizing use of character evidence in defamation actions); *Raymond U v. Duke*

47

*Univ.*, 91 N.C. App. 171, 184, 371 S.E.2d 701, 710 (1988) (noting that character evidence "is relevant and admissible in defamation actions"); *see also* Fed. R. Evid. 405(b) (allowing evidence of specific instances of conduct to prove character when character is "an essential element of a charge, claim, or defense").

By arguing that he wants to "clear his name," Appellant's Br. 25, Mr. Doe further underscores why the public interest in knowing the parties' identities must prevail in his case, *Pub. Citizen*, 749 F.3d at 273. Mr. Doe cannot "clear his name" without using it. *See Moreland*, 2019 WL 2336435, at *2 n.1 ("While Plaintiff repeatedly insists that this lawsuit is an effort to 'clear his already tarnished name,' the Court is hard-pressed to understand how he may do so while proceeding under a pseudonym." (citation omitted)). A damages award against Ms. Chin would not expunge the university disciplinary finding and sanction, and it could not "clear" any name other than "John Doe" if Mr. Doe proceeds by pseudonym. In contrast to the cases where plaintiffs seek to "clear" their names by expunging their disciplinary records, *see supra* pp. 45-46, Mr. Doe cannot overcome the public interest in knowing the identity of the parties in his action for money damages, *see Pub. Citizen*, 749 F.3d at 273.

2.     The district court correctly found that Mr. Doe failed to address the risk of eroding public access to court proceedings.

The district court did not err by finding that Mr. Doe "fail[ed] to address the risk that pseudonymous lawsuits have in eroding public access to proceedings." JA60; *see* Appellant's Br. 39.  Mr. Doe argued to the district court that "[t]here is no public interest in learning the identities of John Doe or Jane Doe through this litigation."  JA49.  Mr. Doe's argument is contrary to this Court's precedent—this Court explicitly recognized in *Public Citizen* that "[t]he public has an interest in knowing the names of the litigants, and disclosing the parties' identities furthers openness of judicial proceedings."  749 F.3d at 273 (citation omitted).  The district court acted within its discretion by rejecting an argument that is inconsistent with binding precedent.  *See* JA60.

Mr. Doe recites part of his district court brief in an effort to show that he made an argument about the public interest that the district court failed to address.  *See* Appellant's Br. 39 (citing JA46).  According to Mr. Doe, he expressly argued that "the crucial interests served by open judicial proceedings are not compromised by allowing party to proceed anonymously.  If a plaintiff is granted leave to proceed under a pseudonym, the public is not denied its right to attend the proceedings or inspect the court's opinions and orders on the underlying constitutional issue."  *Id.*  The excerpted portion of Mr. Doe's district court brief is a quote from one of the *Virginia Tech* cases in Mr. Doe's recitation of the general

49

legal standards applicable to his pseudonym motion. *See* JA46 (quoting *Virginia Tech I*, 2018 WL 5929647, at \*2). Mr. Doe could not expect the district court to construe his quotation from *Virginia Tech I* as an argument worthy of specific mention—the quotation appears inapposite on its face because it refers to the public having the ability to "inspect the court's opinions and orders on the underlying constitutional issue," JA46, and Mr. Doe has not raised a "constitutional issue" in this money damages action against another private citizen.

> 3. The district court did not err by discussing "mutual pseudonymity" and the impact of pseudonymity on the media.

As shown above, the district court properly construed Mr. Doe's motion to be only what Mr. Doe said it was—a request for Mr. Doe to proceed by pseudonym. *See supra* pp. 28-29. The district court's discussion of "principles concerning mutual pseudonymity" was not an abuse of discretion. *See* Appellant's Br. 40. Although Mr. Doe did not seek leave for Ms. Chin to use a pseudonym, Mr. Doe filed a complaint where he referred to himself and the only defendant by pseudonyms. *See* JA4-42.

The district court did not abuse its discretion by recognizing how mutual pseudonymity would make it difficult for the media and the public to monitor litigation. *See* JA60. While this case has not "evoked passionate scrutiny in the media," JA58, Mr. Doe cites no authority to suggest that the lack of media

attention diminishes the public's interest, recognized in *Public Citizen*, 749 F.3d at

273, in knowing the identities of the parties.  *See* Appellant's Br. 40.

*      *      *

As shown above, and in the district court's methodical analysis of the

application of the *James* factors to this case and its independent assessment of the

public's interest, the district court appropriately exercised its discretion to deny Mr.

Doe's motion to proceed by pseudonym.  *See* JA61.  The district court's order is

properly affirmed.

C.     Mr. Doe's Voluntary Inclusion of Personally Identifying Details in the
       Complaint Supports the District Court's Decision to Deny His
       Request to Proceed by Pseudonym.

Because this Court considers the *James* factors nonexclusive, courts may

consider other factors in assessing a request to proceed by pseudonym.  *Pub.*

*Citizen*, 749 F.3d at 273.  As relevant here, courts have considered the movant's

efforts (or lack thereof) to keep his identity confidential.  *See Sealed Plaintiff v.*

*Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008); *Indiana University*, 577 F.

Supp. 3d at 908.  In addition to the factors the district court discussed in its order,

Mr. Doe's decision to allege identifying details about himself supports the district

court's denial of Mr. Doe's pseudonym motion.  *See* JA7.[7]

---

[7] Although Ms. Chin did not have the opportunity to make arguments in opposition
to Mr. Doe's motion below, "[a]n appellee may defend, and this Court may affirm,

While withholding his name, Mr. Doe chose to allege other identifying information.  He disclosed his birthday as February 2, JA12, and alleged the dates when he was accepted, enrolled, and expected to graduate from Tulane.  JA6.  Mr. Doe alleged that he was a South Carolina resident, JA6, and suggested that he returned to South Carolina after he withdrew from Tulane, *see* JA31.  He alleged what his major was, that he was on track to graduate with honors, and what graduate program he expected to attend.  JA6-7.  He alleged the dates and locations of events he attended.  JA8, JA11.  Mr. Doe detailed his activities and accomplishments, including his leadership positions in two organizations (one named and one described by function), his membership in three named Greek organizations, his service as a business school ambassador and academic tutor, and his participation on the club baseball team.  JA7; *see supra* p. 4.

Mr. Doe's detailed allegations about himself undermine his request to litigate this case anonymously.  Mr. Doe's allegations about his activities and accomplishments appear calculated to show the public a positive reputation that Ms. Chin purportedly damaged.  *See* JA7.  By making those allegations but seeking pseudonym protection, Mr. Doe attempts to benefit from his reputation without risking embarrassment.  *See supra* pp. 33-34.  At the same time, Mr. Doe risks public identification by anyone willing to take the time to research the

---

the district court's judgment on any basis supported by the record." *Sloas v. CSX Transp. Inc.*, 616 F.3d 380, 388 n.5 (4th Cir. 2010).

specific biographical information he pleaded.  *See, e.g.*, *Indiana University*, 577 F. Supp. 3d at 908 (noting that where plaintiff effectively revealed his identity by alleging "that he was elected President of the Pi Lambda Phi fraternity for the 2020-2021 schoolyear," that disclosure weighed against his anonymity request). Mr. Doe's intentional inclusion of identifying information about himself in his anonymous complaint provides an additional ground for the Court to conclude that the district court properly denied Mr. Doe's pseudonym motion.  *See id.*

## CONCLUSION

For the reasons stated above, Defendant-Appellee Lily Chin respectfully requests that this Court affirm the decision of the district court denying Plaintiff-Appellant John Doe's motion for leave to proceed by pseudonym.

This the 29th day of March, 2023.

ELLIS & WINTERS LLP

<u>/s/ Kelly Margolis Dagger</u>
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant-Appellee Lily Chin*

<u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

A.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

this brief contains 12,928 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

B.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportionally spaced typeface using 14 Point Times New Roman in Microsoft Word.

This the 29th day of March, 2023.

ELLIS & WINTERS LLP

<u>/s/ Kelly Margolis Dagger</u>
Kelly Margolis Dagger

*Counsel for Defendant-Appellee Lily Chin*

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was filed with the clerk of court using the CM/ECF system which will send notice of the filing to counsel for Plaintiff-Appellant addressed as follows:

Kara Gorycki, Esq.
kgorycki@nmllplaw.com

This the 29th day of March, 2023.

ELLIS & WINTERS LLP

<u>/s/ Kelly Margolis Dagger</u>
Kelly Margolis Dagger

*Counsel for Defendant-Appellee Lily Chin*

56