No. 23-1058

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

JOHN DOE,
*Plaintiff-Appellant,*
v.
JANE DOE,
*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
The Honorable James C. Dever III
Case No. 5:22-CV-00500-D-BM

**Brief of *Amici Curiae* First Amendment Coalition and
Prof. Eugene Volokh
in Support of Defendant-Appellee**

Eugene Volokh*
First Amendment Amicus Brief Clinic
UCLA School of Law
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

* Counsel would like to thank Samantha Frazier, Katelyn Taira, and Jacob Haas, UCLA School of Law students who worked on the brief.

## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to <u>Federal Rules of Appellate Procedure 26.1</u> and 29(a)(4)(A), *amicus curiae* First Amendment Coalition certifies that it has no parent corporations or any publicly held corporations owning 10% or more of its stock.

# TABLE OF CONTENTS

Rule 26.1 Disclosure Statement ....................................................... i

Table of Contents ......................................................................... ii

Table of Authorities .................................................................... iii

Interest of *Amici Curiae* ............................................................... 1

Summary of Argument .................................................................. 2

Argument .................................................................................... 3

I.    Risk to reputation does not suffice to justify pseudonymity ............ 3

II.   Openness is especially important when deciding whether
      speech is constitutionally protected ................................... 12

III.  Unlike Title IX cases in which plaintiffs are granted
      pseudonymity when suing universities, Appellant's suit is a
      simple defamation case against a private individual ..................... 13

IV.   The *Jacobson* factors weigh against Appellant proceeding
      pseudonymously ........................................................... 16

Conclusion ................................................................................ 20

Certificate of Compliance ........................................................... 21

Certificate of Service ................................................................ 22

# TABLE OF AUTHORITIES

## Cases

*A.B.C. v. XYZ Corp.*, 282 N.J. Super. 494 (App. Div. 1995) ................. 19

*B.R. v. F.C.S.B.*, No. 1:19-cv-00917, 2020 WL 12435689
    (E.D. Va. Mar. 10, 2020) .............................................. 10, 15

*Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d
    1165 (6th Cir. 1983) ..................................................... 18

*Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804
    (E.D. Va. 2012) .......................................................... 9

*Chalmers v. Martin*, No. 21-cv-02468-NRN, 2021 WL
    6136179 (D. Colo. Dec. 28, 2021) ...................................... 6

*D.E. v. Doe*, 834 F.3d 723 (6th Cir. 2016) .............................. 5

*Doe v. Bogan*, 542 F. Supp. 3d 19 (D.D.C. 2021) ....................... 3

*Doe v. Byrd*, No. 1:18-cv-00084 (M.D. Tenn. Dec. 17, 2019) ............ 18

*Doe v. Colgate Univ.*, No. 5:15-cv-1069, 2016 WL 1448829
    (N.D.N.Y. Apr. 12, 2016) ............................................... 14

*Doe v. Delta Airlines Inc.*, 310 F.R.D. 222 (S.D.N.Y. 2015) ......... 18, 19

*Doe v. Doe*, 668 N.E.2d 1160 (Ill. Ct. App. 1996) ...................... 6

*Doe v. Doe*, No. 20-cv-5329, 2020 WL 6900002 (E.D.N.Y.
    Nov. 24, 2020) .......................................................... 11

*Doe v. Fedcap Rehab. Servs., Inc.*, No. 17-cv-8220-JPO,
    2018 WL 2021588 (S.D.N.Y. Apr. 27, 2018) ............................. 8

*Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011) ............................ 5

*Doe v. Milwaukee Cty.*, No. 18-cv-503, 2018 WL 3458985
    (E.D. Wisc. July 18, 2018) .............................................. 8

iii

*Doe v. MIT*, 46 F.4th 61 (1st Cir. 2022) ................................................ 14

*Doe v. Predator Catchers, Inc.*, No. 3:22-cv-00414-MMH-LLL, 2023 WL 2667012 (M.D. Fla. Mar. 27, 2023) .......................... 17

*Doe v. Prudential Ins. Co. of Am.*, 744 F. Supp. 40 (D.R.I. 1990) ................................................................................. 9

*Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014) ...................... passim

*Doe v. United States*, No. 19-1888C, 2020 WL 1079269 (Fed. Cl. Mar. 5, 2020) ................................................... 9

*Doe v. Wash. Post Co.*, No. 1:19-cv-00477-UNA, 2019 WL 2336597 (D.D.C. Feb. 26, 2019) .................................................. 3

*Doe v. Zinsou*, No. 19-cv-7025, 2019 WL 3564582 (S.D.N.Y. Aug. 6, 2019) ................................................. 18

*Does 1-3 v. Mills*, 39 F.4th 20 (1st Cir. 2022) .................................. 2, 13

*Garnett v. Remedi Seniorcare of Virginia, LLC*, 892 F.3d 140 (4th Cir. 2018) ....................................................... 4

*Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725 (D. Md. 2009) ....................................................... 4

*In re Boeing 737 MAX Pilots Litig.*, No. 1:19-cv-5008, 2020 WL 247404 (N.D. Ill. Jan. 16, 2020) ............................... 18

*Lawson v. Rubin*, No. 17-cv-6404, 2019 WL 5291205 (E.D.N.Y. Oct. 18, 2019) ............................................. 18, 19

*McMichael v. James Island Charter Sch.*, 840 F. App'x 723 (4th Cir. 2020) ................................................. 4

*Mueller v. Raemish*, 740 F.3d 1128 (7th Cir. 2014) ......................... 12

*Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240 (10th Cir. 1989) ........................... 5

*P.D. & Assocs. v. Richardson*, 64 Misc. 3d 763 (N.Y. Sup. Ct. 2019) .................................................................... 3

*Roe v. Doe*, No. 18-cv-666, 2019 WL 2058669 (D.D.C. May 7, 2019) .................................................................... 6

*Roe v. Does 1–11*, No. 20-cv-3788, 2020 WL 6152174 (E.D.N.Y. Oct. 14, 2020) ...................................... 18

*Roe v. Skillz, Inc.*, 858 F. App'x 240 (9th Cir. 2021) ................. 5

*San Bernardino Cty. Dep't of Pub. Soc. Servs. v. Super. Ct.*, 232 Cal. App. 3d 188 (1991)...................................... 18

*Southern Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979) ................ 8

*Stern v. Stern*, 66 N.J. 340 (1975)......................................... 11

*Tolton v. Day*, No. 19-cv-945, 2019 WL 4305789 (D.D.C. Sept. 11, 2019)................................................................ 19

*United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242 (10th Cir. 2017)....................................... 5

*United States v. Stoterau*, 524 F.3d 988 (9th Cir. 2008)........... 7

**Other Authorities**

Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353 (2022)................................................ 14

## INTEREST OF *AMICI CURIAE*[1]

The First Amendment Coalition is a nonprofit, nonpartisan organization committed to defending freedom of speech, freedom of the press, and the public's right to access information regarding the conduct of the people's business. FAC seeks to improve compliance with open government principles through education and public advocacy. FAC has advocated for access to judicial proceedings by initiating litigation, moving to unseal court records, and appearing as *amicus curiae* on behalf of parties opposing secrecy in the judicial process.

Eugene Volokh is the author of *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353 (2022). His only interest in the case is in promoting the sound development of pseudonymity law.

---

[1] No party or party's counsel has authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting the brief. No person has contributed money that was intended to fund preparing or submitting the brief, except that UCLA School of Law paid the expenses involved in filing this brief.

Defendant-appellee has consented to the filing of this brief; Plaintiff-appellant has not.

1

## SUMMARY OF ARGUMENT

John Doe is trying to punish Jane Doe (Lily Chin) for accusing him of sexual assault. JA40. If he succeeds, she will likely be driven into bankruptcy based on her speech—speech that she claims is true and therefore constitutionally protected.

He is of course entitled to do this, so long as he is able to prevail on his libel claim. But he is not entitled to do this under the cloak of secrecy. Like other libel plaintiffs, and like most other civil plaintiffs and defendants, as well as criminal defendants, he must litigate this case in his own name.

"Pseudonymous litigation undermines the public's right of access to judicial proceedings. The public has an interest in knowing the names of the litigants, . . . and disclosing the parties' identities furthers openness of judicial proceedings . . . ." *Doe v. Public Citizen*, 749 F.3d 246, 263 (4th Cir. 2014) (citations omitted). Public access, including the norm of litigating under parties' own names, "allows the citizenry to monitor the functioning of our courts, thereby [e]nsuring quality, honesty and respect for our legal system." *Does 1-3 v. Mills*, 39 F.4th 20, 25 (1st Cir. 2022) (cita-

tion omitted). Nowhere is this public right to monitor the judicial process—and the public confidence in the process that this right can bring—more important than when defendants are facing financial ruin for the content of their speech.

## ARGUMENT

## I.  Risk to reputation does not suffice to justify pseudonymity

Appellant fears "potential irreparable harm" to his "reputation" and livelihood that would result from proceeding publicly. Appellant Br. 17, 25, 26. Such reputational harm, though, is potentially present in virtually all defamation litigation:

> The allegations in defamation cases will very frequently involve statements that, if taken to be true, could embarrass plaintiffs or cause them reputation harm. This does not come close to justifying anonymity, however, and plaintiffs regularly litigate defamation claims on the public docket even when the allegedly defamatory statement could, if taken as true, cause them some reputation harm.

*Doe v. Bogan*, 542 F. Supp. 3d 19, 23 (D.D.C. 2021); *see also Doe v. Wash. Post Co.*, No. 1:19-cv-00477-UNA, 2019 WL 2336597, at *1 (D.D.C. Feb. 26, 2019) (rejecting pseudonymity in a libel case); *P.D. & Assocs. v. Richardson*, 64 Misc. 3d 763, 767 (N.Y. Sup. Ct. 2019) (likewise).

And this is true even when (as in *Doe v. Bogan*) the alleged libel had not yet been widely publicized, so that the litigation would publicly expose the allegations for the first time. For example, the plaintiff in *Garnett v. Remedi Seniorcare of Virginia, LLC*, 892 F.3d 140, 142 (4th Cir. 2018), proceeded publicly in a defamation lawsuit that she brought against her employer, though the lawsuit itself amplified the "crude" and embarrassing allegations made by her coworker to other employees—allegations that the plaintiff was having vaginal surgery due to an STD.

Similarly, in *Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725 (D. Md. 2009), *aff'd sub nom. Henderson v. Claire's Boutiques, Inc.*, 422 F. App'x 269 (4th Cir. 2011), the plaintiff sued a retail store after an employee accused her of theft in front of a small group of customers. The plaintiff sued openly, even though doing so amplified the shoplifting accusation far beyond its original modest audience. *Id.* at 732. And in *McMichael v. James Island Charter Sch.*, 840 F. App'x 723, 728 (4th Cir. 2020), plaintiffs sued their former employer over defamation connected with their having been fired, even though this necessarily publicized the defamatory statements beyond the "gossip grapevine" where the statements were first circulated. The District Court decision in this case

4

simply requires John Doe to do what each of those plaintiffs had to do: Litigate his claim openly and publicly.

More broadly, other circuits have expressly made clear that the risk of economic harm, including damage to professional and employment prospects, does not allow a party to proceed pseudonymously. "That a plaintiff may suffer embarrassment or economic harm is not enough" to justify pseudonymity. *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011). That is equally true when the economic harm stems from "potential negative scrutiny from future employers." *D.E. v. Doe*, 834 F.3d 723, 728 (6th Cir. 2016). Pseudonymity cannot be justified by "economic or professional concerns." *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989); *United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1249 n.10 (10th Cir. 2017); *Roe v. Skillz, Inc.*, 858 F. App'x 240, 241 (9th Cir. 2021).

Indeed, many kinds of civil suits and criminal prosecutions (even beyond defamation lawsuits) routinely expose litigants to the likelihood of reputational harm. For example, civil defendants accused of sexual assault typically proceed publicly, even though identifying themselves as someone merely accused could be professionally ruinous. Despite the

5

"reputational interest at stake" in such cases, defendants are "not enti-

tled to the rare dispensation of anonymity against the world." *Roe v. Doe*,

2019 WL 2058669, *5-*6 (D.D.C. May 7, 2019).

> The supposed harm from being the target of a lawsuit alleging sex-
> ual abuse is not enough to justify shrouding this case with a veil of
> secrecy. . . . In nearly all civil and criminal litigation filed in the
> United States Courts, one party asserts that the allegations leveled
> against it by another party are patently false, and the result of the
> litigation may quickly prove that. However, if the purported falsity
> of the complaint's allegations were sufficient to seal an entire case,
> then the law would recognize a presumption to seal instead of a
> presumption of openness.

*Chalmers v. Martin*, No. 21-cv-02468-NRN, 2021 WL 6136179, *2-*3 (D.

Colo. Dec. 28, 2021) (cleaned up).

> [I]t is difficult to see how defendant [who is being sued for alleged
> child molestation] has set himself apart from any individual who
> may be named as a defendant in a civil suit for damages. It seems
> to this court that any doctor sued for medical malpractice, any law-
> yer sued for legal malpractice, or any individual sued for sexual mo-
> lestation can assert that the plaintiff's allegations will cause harm
> to his reputation, embarrassment and stress among his family
> members, and damage to his business as a result of the litigation.
> Any such doctor or lawyer can also assert that the plaintiff's act of
> naming him as a defendant is a bad-faith tactic to induce settlement
> and reap economic gain at the defendant's expense through base-
> less allegations.

*Doe v. Doe*, 668 N.E.2d 1160, 1167 (Ill. Ct. App. 1996). Just as defendants

seeking to rebut claims of sexual abuse are not pseudonymized, so plain-

tiffs seeking to rebut such claims should not be either.

6

Similarly, criminal defendants accused of possessing child pornography would surely prefer to proceed pseudonymously in order to minimize the reputational harm posed by such a serious accusation. Yet they too must proceed publicly, for if the nature of "[child pornography and child sexual abuse offenses] could qualify [a defendant] for the use of a pseudonym, there would be no principled basis for denying pseudonymity to any defendant convicted of a similar sex offense." *United States v. Stoterau*, 524 F.3d 988, 1013 (9th Cir. 2008). Indeed, most defendants accused of any crime would likely prefer to proceed pseudonymously, given the stigma associated with criminal proceedings. Still, the legal system demands that they defend themselves publicly and openly.

Plaintiffs in employment disputes may also often want to protect their professional reputation and employment prospects by using pseudonyms. For example, an employment discrimination plaintiff who alleges she was improperly fired might prefer to sue pseudonymously, fearing that suing publicly (1) would identify her as a litigious employee, and (2) would air the employer's purported (but, she argues, pretextual) reasons for firing her. Yet despite these quite rational fears, employment discrimination plaintiffs are still required to proceed publicly. *See Southern*

*Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (denying plaintiffs' request to proceed under a pseudonym, partly because plaintiffs "face no greater threat of retaliation than the typical plaintiff alleging Title VII violations, including the other women who, under their real names and not anonymously, have filed sex discrimination suits against large law firm").

> No doubt lots of parties would prefer to keep their disputes private. For example, a plaintiff alleging he was discriminated against by his employer when his employment was terminated typically will have to disclose the employer's reason for terminating the plaintiff's employment—a reason that the plaintiff disputes is the real reason and which is often embarrassing or even damaging to his or her reputation. But there is no suggestion that such a plaintiff may proceed under a pseudonym to protect his or her reputation.

*Doe v. Milwaukee Cty.*, No. 18-cv-503, 2018 WL 3458985, at *1 (E.D. Wisc. July 18, 2018); *see also Doe v. Fedcap Rehab. Servs., Inc.*, No. 17-cv-8220-JPO, 2018 WL 2021588, at *3 (S.D.N.Y. Apr. 27, 2018) ("At bottom, Plaintiff wants what most employment-discrimination plaintiffs would like: to sue their former employer without future employers knowing about it. But while that desire is understandable, our system of dispute resolution does not allow it.")

Likewise, those accused of academic misconduct or cheating would prefer to remain anonymous. Still, "[t]he reputational risks [of false assumptions about the plaintiff's character] are not sufficient to outweigh the public interest in the openness of . . . litigation," because pseudonymity is merely an "interest in avoiding the embarrassment and exposure to public scrutiny that commonly attend litigation." *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 809, 812 (E.D. Va. 2012).

Indeed, it is the ubiquity of reputational harm in civil and criminal suits alike that makes pseudonymity inappropriate, as some of the cases cited above note. Allowing pseudonymity simply because a case involves potentially reputationally damaging matters "would create an exception that virtually swallows the rule." *Doe v. Prudential Ins. Co. of Am.*, 744 F. Supp. 40, 42 (D.R.I. 1990). "Plaintiffs['] expressed generalized fear of retaliation and reputational harm appears to be consistent with the sort of concern that might exist whenever a plaintiff elects to bring this type of case." *Doe v. United States*, No. 19-1888C, 2020 WL 1079269, at *2 (Fed. Cl. Mar. 5, 2020) (so stating in an employment law case, but using logic that would equally apply to libel cases).

To be sure, on occasion a few courts have allowed pseudonymity in situations where other courts would have denied it, and in particular when they faced special concerns raised by *asymmetric* pseudonymity, where one party would be pseudonymous but the other would not be. (In this case, defendant Jane Doe has expressly identified herself in her papers as Lily Chin, and does not seek pseudonymity.) Thus, for instance, *B.R. v. F.C.S.B.*, No. 1:19-cv-00917, 2020 WL 12435689 (E.D. Va. Mar. 10, 2020), *aff'd as to other matters*, 17 F.4th 485 (4th Cir. 2021), allowed pseudonymity not just for the sexual assault plaintiff (such plaintiffs are often allowed to proceed pseudonymously) but also for the defendants, because "the Court does find it fundamentally unfair that Plaintiff be permitted to use a pseudonym while the Defendants lie vulnerable to publicly litigating such a sensitive matter," *id.* at *26. Likewise, another District Court case allowed pseudonymity for a defendant accused of sexual assault as well as for his accuser, on the grounds that,

> if the plaintiff is allowed to proceed anonymously, as both parties agree she should be able to do, it would serve the interests of justice for the defendant to be able to do so as well, so that the parties are on equal footing as they litigate their respective claims and defenses.

*Doe v. Doe*, No. 20-cv-5329, 2020 WL 6900002, at *4 (E.D.N.Y. Nov. 24, 2020).

It is not clear that the analyses in *B.R.* and *Doe v. Doe* (E.D.N.Y.) are correct. *B.R.*, for instance allowed pseudonymity even for the government body defendant, a school board (which is now identified in the case as "F.C.S.B."), as well as some school officials who were accused of failing to properly protect B.R.; that may well be going too far. And *Doe v. Doe* relied in part on the fact that the defendant there "is a partner of a well-known law firm in New York and an adjunct law school instructor," 2020 WL 6900002, at *3—yet surely any reputational protection offered defendants must be the same regardless of their professional position. *See Stern v. Stern*, 66 N.J. 340, 349 (1975) (overturning trial court's grant of pseudonymity in a divorce case, where the husband was found guilty of adultery, on the grounds that "we do not approve . . . [of] throw[ing] the protective cloak of anonymity over a successful and well-known member of the bar, as would appear to have been the case here"). These may be reasons not to follow *B.R.* and *Doe v. Doe* (E.D.N.Y.) generally. But in any event, those cases should not be applied to libel lawsuits, in which only one party seeks pseudonymity.

## II. Openness is especially important when deciding whether speech is constitutionally protected

The right of public access "protects the public's ability to oversee and monitor the workings" of the legal system and "promotes the institutional integrity of the Judicial Branch." *Doe v. Public Citizen*, 749 F.3d 246, 263 (4th Cir. 2014). "Pseudonymous litigation undermines the public's right of access to judicial proceedings. The public has an interest in knowing the names of the litigants, . . . and disclosing the parties' identities furthers openness of judicial proceedings . . . ." *Id.* at 273 (citations omitted). This is important to "[p]ublic confidence in the judiciary," which "cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *Id.* at 263 (cleaned up).

"Secrecy makes it difficult for the public (including the bar) to understand the grounds and motivations of a decision, why the case was brought (and fought), and what exactly was at stake in it." *Mueller v. Raemisch*, 740 F.3d 1128, 1135-36 (7th Cir. 2014). Public access, including the norm of litigating under parties' own names, "allows the citizenry

to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." *Does 1-3 v. Mills*, <u>39 F.4th 20, 25</u> (1st Ci<u>r. 2022</u>) (citation omitted).

And public oversight is particularly important when a person is trying to use the legal system to punish another person for making an accusation that, if true, would be constitutionally protected and valuable speech. Jane Doe's speech may be punished if it is knowingly or recklessly false—but the public is entitled to monitor the proceedings so it can be confident that the correct result has been reached. Indeed, the need for "[p]ublic confidence in the judiciary," *Public Citizen*, <u>749 F.3d at 263</u>, is especially strong when someone is being sued over this sort of #MeToo claim. If a decision against Jane Doe is rendered "behind closed doors and then announced in conclusive terms to the public," with details about the plaintiff "sealed from public view," that would understandably increase public skepticism about the fairness of the process. *Id*.

## III. Unlike Title IX cases in which plaintiffs are granted pseudonymity when suing universities, Appellant's suit is a simple defamation case against a private individual

One of the rare situations in which courts have usually determined that there were "exceptional circumstances" justifying pseudonymity

arises in Title IX cases, where plaintiffs sue a university for how it conducted a Title IX investigation. *See* Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1441-48 (2022) (collecting cases).

Courts have concluded that "the confidentiality of a Title IX disciplinary proceeding may sometimes . . . furnish grounds for finding an exceptional case warranting pseudonymity." *Doe v. MIT*, 46 F.4th 61, 74 (1st Cir. 2022). This is because confidentiality is an "important aspect" of Congress's procedural requirements mandating that federally funded universities "adopt policies guaranteeing 'a prompt, fair, and impartial investigation and resolution' [of sexual assault claims] and giv[e] certain procedural rights to both 'the accuser and the accused.'" *Id*; *see also Doe v. Colgate Univ.*, No. 5:15-cv-1069, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("[T]he accused colleges and universities recognize the highly personal and sensitive nature of these cases as well as the limited value of forcing plaintiffs to reveal identities when seeking to vindicate their federal rights."). And the remedy often sought—re-enrollment, or a clean academic record—is closely tied to the confidentiality concerns underlying Title IX proceedings. *See Doe v. MIT*, 46 F.4th at 74. Appellant's

specific examples of where pseudonymity has been granted almost exclusively involve such Title IX cases brought against universities. Appellant Br. 13-15, 21-25, 29, 32, 33. (The only exceptions are *B.R. v. F.C.S.B.*, discussed *supra* p. 10, and *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993), , which involved concerns about "protect[ion of] children," *id.* at 242, that are absent here.)

But these concerns justifying pseudonymity in Title IX lawsuits do not extend to libel lawsuits, whether or not the lawsuit originates from a complaint brought by a classmate. While Congress has set up a system for confidentiality in university proceedings, nothing within that system suggests a decision to providing pseudonymity to libel plaintiffs.

John Doe did not bring a lawsuit against Tulane in an attempt to reverse the expulsion that fundamentally altered his future path. Instead, he sued his accuser for compensatory and punitive damages. That his lawsuit stems from the accuser's allegations made to a university does not make it any different from a lawsuit based on allegations made to the police, or to an employer, or on Twitter. John Doe is suing Lily Chin for defamation. He should be treated like any other defamation plaintiff.

## IV. The *Jacobson* factors weigh against Appellant proceeding pseudonymously

The analysis above explains why the *James v. Jacobson*, 6 F.3d at 238, factors—as elaborated by *Doe v. Public Citizen*, 749 F.3d at 273-75—counsel against pseudonymity. "Proceeding by pseudonym is a 'rare dispensation,'" 749 F.3d at 273 (quoting *Jacobson*, 6 F.3d at 238), that is unavailable when the desire "is merely to avoid the annoyance and criticism that may attend any litigation." *Jacobson*, 6 F.3d at 238. As noted in Part I, all libel litigation over allegations of serious misconduct (and much other civil and criminal litigation) risks exposing parties to criticism based on the allegations. And though pseudonymity may sometimes be allowed "to preserve privacy in a matter of sensitive and highly personal nature," *id.*, the cases cited in Part I illustrate that being accused of sexual assault does not generally authorize pseudonymity.

There is likewise no evidence that "identification poses a risk of retaliatory physical or mental harm to the requesting party." *Id.* The pages cited by the Appellant's Brief (at 14) supporting the claims of "physical and mental harm," JA48; JA4-5, JA14-17, JA30-31, do not give any concrete evidence of likely physical harm. *Cf. Doe v. Predator Catchers, Inc.*, No. 3:22-cv-00414-MMH-LLL, 2023 WL 2667012 (M.D. Fla. Mar. 27,

2023) (a rare case allowing pseudonymity for a libel plaintiff because there was specific evidence of "threat[s of] violence against plaintiff," *id.* at 3, based on the allegations that he had sought to have sex with a minor). And, to the extent those cited passages characterize damage to reputation and professional and social prospects as "mental harm," that again is the sort of consequence that is ubiquitous in lawsuits related to allegations of serious misconduct, *see* Part I.

There is also no risk of "retaliatory physical or mental harm . . . to innocent nonparties," *Jacobson*, 6 F.3d at 238. Lily Chin has identified herself; John Doe labeled the other classmate that he was found to have assaulted as "Sue Roe," and there is no reason to think that requiring John Doe to identify himself would risk retaliatory physical or mental harm to her. Respondent Br. 27. John Doe's "age[]," *id.*, does not cut in favor of pseudonymity, since Doe appears to be not just above 18 but above 21. JA6. That the lawsuit is "against a . . . private party," *id.* at 238, has at times been weighed in favor of pseudonymity and at times against, Volokh, *supra*, 73 Hastings L.J. at 1392-93 (citing cases), and is probably best treated as neutral here.

Finally, "the risk of unfairness to the opposing party" cuts against pseudonymity. One value of requiring parties to identify themselves is that a named witness, including a party witness, "may feel more inhibited than a pseudonymous witness from fabricating or embellishing an account." *Doe v. Delta Airlines Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015), *aff'd*, 672 F. App'x 48 (2d Cir. 2016); *see also Roe v. Does 1–11*, No. 20-cv-3788, 2020 WL 6152174, at *3 (E.D.N.Y. Oct. 14, 2020); *Lawson v. Rubin*, No. 17-cv-6404, 2019 WL 5291205, at *3 (E.D.N.Y. Oct. 18, 2019); *Doe v. Zinsou*, No. 19-cv-7025, 2019 WL 3564582, at *7 (S.D.N.Y. Aug. 6, 2019); *In re Boeing 737 MAX Pilots Litig.*, No. 1:19-cv-5008, 2020 WL 247404, at *2 (N.D. Ill. Jan. 16, 2020); *San Bernardino Cty. Dep't of Pub. Soc. Servs. v. Super. Ct.*, 232 Cal. App. 3d 188 (1991). "'Public access creates a critical audience and hence encourages truthful exposition of facts, an essential function of a trial.'" *Doe v. Byrd*, No. 1:18-cv-00084, at 12 n.7 (M.D. Tenn. Dec. 17, 2019) (quoting *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983) (a case involving sealing rather than pseudonymity)).

Letting a party testify pseudonymously might also prejudice the jury, by "risk[ing] . . . giving [the party's] claim greater stature or dignity."

18

*Lawson v. Rubin*, No. 17-cv-6404-BMC-SMG, 2019 WL 5291205, at *3 (E.D.N.Y. Oct. 18, 2019); *Doe v. Delta Airlines, Inc.*, 310 F.R.D. at 225. And it might implicitly "tarnish" a defendant in the jury's eyes by conveying to the jury "the unsupported contention that the [defendant] will seek to retaliate against [the plaintiff]." *Tolton v. Day*, No. 19-cv-945, 2019 WL 4305789, at *4 (D.D.C. Sept. 11, 2019); *A.B.C. v. XYZ Corp.*, 282 N.J. Super. 494, 504 (App. Div. 1995).

But, most significantly, the *Jacobson* factors are "nonexclusive," *Doe v. Public Citizen*, 749 F.3d at 273, and the most significant feature of the factors is that they are aimed at identifying "exceptional circumstances" in which pseudonymity is allowed, *id.* For reasons given in Parts I and III, there are no such exceptional circumstances. And the most important consideration, beyond the "nonexclusive factors," is the one discussed in Part II: "the public's interest in open proceedings," "which must inform a district court's pseudonymity calculus," *id.* at 274, and which here cuts sharply against pseudonymity.

## CONCLUSION

John Doe should be treated like other libel plaintiffs are routinely treated, and like most other civil litigants and criminal defendants are routinely treated: He should have to litigate this case in his own name.

That is the way to provide for maximum public ability to supervise the judicial system when an accused is suing an accuser, seeking compensatory and punitive damages based on the accuser's speech. And it is the way to provide maximum public confidence that, if the accuser is indeed subjected to a massive damage award, this will have been done fairly and correctly.

Respectfully Submitted,

s/ Eugene Volokh

Attorney for *Amici Curiae*
First Amendment Clinic
UCLA School of Law
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

20

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,085 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2016 in 14-point Century Schoolbook.

Dated: April 3, 2023

s/ Eugene Volokh
Attorney for *Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief today with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

All participants in the case are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: April 3, 2023

s/ Eugene Volokh
Attorney for *Amici Curiae*